# Steinmetz *against* Logan.

In all cases, as well as to warrants as locations, whether descriptive of the land upon which they are surveyed or not, it is the duty of the owners to have the surveys returned within some reasonable time; otherwise subsequent purchasers or settlers may be preferred.

ERROR to the District Court of *Alleghany* county.

The above was an action of ejectment, brought by the defendant in error, who was the plaintiff below, for the recovery of fifty acres, more or less, adjoining lands of said plaintiff below, Jeremiah Murray, Jacob Steinmetz, and others. The land is situated in Plum township, Alleghany county.—The defendant pleaded not guilty— tried by jury, and verdict for the plaintiff, and judgment on the verdict.

[Steinmetz v. Logan.]

The real quantity of land in controversy amounted to thirty-nine acres and twelve perches.

In the month of March, 1808, John Shuke commenced an improvement, as tenant, under the heirs of Nicholas Bausman, who claimed, under a sheriff's deed, the right of John M'Kee; and in the month of May, of the same year, settled on the land, by virtue of which the land in dispute is claimed by the plaintiff in this ejectment. Said John Shuke made sundry improvements on said land, and continued to reside thereon for about twelve years, at which time he delivered up the possession to Joseph Logan, who purchased from the heirs of said Nicholas Bausman, and who continued to reside thereon ever since.

Jacob Steinmetz, under whom the other defendants in the ejectment claimed, settled on a tract of land, adjoining the tract of land on which John Shuke settled, in the month of March, 1807; and he and the other defendants have continued their settlements thereon ever since.

The whole of the vacant and unsettled land, at the time of the settlement of Jacob Steinmetz, adjoining his settlement, including all the land claimed by the heirs of Nicholas Bausman, and now claimed by Joseph Logan, amounted to about two hundred and fifty acres. That now claimed by the said Joseph Logan, under his said purchase, including the land in controversy, amounts to one hundred and forty-two acres and one hundred and thirty-eight perches. The land now in dispute is principally cleared by the defendants below, and occupied by them for several years; and testimony was given, by the plaintiff below, of John Shuke having claimed to the line to which the plaintiff below now claims as his boundary, as early as 1809, and then having occupied the same as a sugar camp; and, also, that said Jacob Steinmetz then showed a line which he said was the boundary between him and Shuke, and which would exclude from his claim the land now in controversy. There was also testimony of such a line on the ground, and of a line which would include in Steinmetz's claim the land in controversy, and different and contradictory testimony of their respective claims at different times.

The defendants below gave in evidence a warrant, in the name of Ephraim Steele, dated the twentieth of September 1773, for one hundred and fifty acres of land, lying on both sides of Turtle creek, above and adjoining land surveyed for Mr. Butler, on said branch of Turtle Creek in the county of Westmoreland; and it was also testified, that the same specially described the land on which Jacob Steinmetz resided, including the land now in controversy; it was also testified, that old lines were found on the ground corresponding nearly with the date of the said warrant, including the land which said Jacob Steinmetz resided on, also embracing the land now in dispute.

The defendants below also gave in evidence a warrant, in the

[Steinmetz *v.* Logan.]

name of John M'Kee, dated the first of February, 1793, for one hundred and twenty acres of land, adjoining the land of Christopher Wonder, William Edwards, and others, which it was testified applied to the land on which the plaintiff below resided, including also, with reasonable certainty, the land in dispute.

The plaintiff also produced in evidence, a plot, or draft of a survey, on said warrant, in the name of John M'Kee, together with the deposition of John Parker, testifying that he was assistant deputy surveyor to John Moore, Esq., during the year 1793; that said draft was made by him as such, and filed as a rough draft in said John Moore's office, as an office paper, which lands lay in the district of John Moore at that time; and that he made the survey, marked on the rough draft John M'Kee, for John M'Kee; and, in making said survey, ran into Ephraim Steele's survey, through mistake, and did not intend it to be so; and said survey was made at the request of John M'Kee, but whether returned to the land office, he does not know.

In said rough draft, the part run into Ephraim Steele is noted, and struck off, and separated by a black line, and said part includes the land now in dispute; and on the part of the draft not interfering with Ephraim Steele's survey is noted the words "John M'Kee, 70 acres, 120 perches," by said John Parker.

It was testified that both Steinmetz and Nicholas Bausman declared that they claimed by M'Kee's survey.

The counsel for the defendants submitted the following points to the court, to which the following answers were given by Grier, President.

1.—"If the warrant of Ephraim Steele be special for the land in dispute, and duly surveyed, and the land in dispute be within that survey, the plaintiff cannot recover from any title shown, or set up in this case."

*Answer.*—As the court have already informed you, this is not the law. It matters not whether Steele's warrant was descriptive or not—it might justly be abandoned in 1793, when M'Kee's warrant was surveyed; and if plaintiff's claim, when he took possession in 1808, was merely as an improver, and adverse to *M'Kee's warrant*, he had a right to treat them both as abandoned, and he has a right to recover in this case, if you believe the testimony.

2.—If the lines, as originally run by John Parker, were afterwards, and before any return, discovered to be run by mistake, and if said line ran across land surveyed previously on a warrant of Ephraim Steele, or so believed by him, then the plot or draft filed by him as an office paper, in the deputy surveyor's office, correcting said survey, if the same was so intended by him, is to be deemed, as thus corrected, to be the official survey on John M'Kee's warrant, until altered by the deputy surveyor, or by order of the surveyor general or board of property.

*Answer.*—There is no evidence that the survey was not run

[Steinmetz v. Logan.]

according to the wishes of John M'Kee, or the owner of the warrant in that name.　If there was any mistake in the matter, it was in the surveyor's supposing he could not include the land which had been once included in a survey to Steele.　If he did actually afterwards, under such mistaken idea, exclude such portion of the land from M'Kee's survey, without the consent of M'Kee, it would not affect M'Kee's claim to the whole, as the survey has never been returned, and those claiming under M'Kee have taken possession of the whole before any intervening title occurred.　There is nothing on the face of that paper brought from the deputy surveyor's office, which hinders the owners of M'Kee's warrant from claiming up to the original lines run for them, or stops them from claiming to have that survey returned, including the land in dispute—and if, at the time the survey was made for M'Kee, he was under the mistaken notion that he could take no land included by Steele's survey, if he has not had his survey so returned—but those claiming it, have claimed up to the lines originally made, they have a right to hold it, from any thing that has appeared in evidence in this case.

3.—That no declaration or agreement as to boundary between Shuke and Steinmetz can operate, to enlarge or contract the real boundary of the owner of the fee, Shuke's landlord.

*Answer.*—It is true, as a general rule, that a tenant put into possession of a piece of property, has no right to enlarge or diminish his landlord's boundaries.　But it is also true, that if Shuke went into possession as an improver for Bausman, he had a right to fix the bounds with an adjoining improver, if no settled bounds had been fixed by his landlord.　There is no evidence that Shuke claimed or fixed any other bounds than those claimed by his landlord, whose deed includes, by description, this very land in dispute, if the jury believe the witnesses.

4.—That as the plaintiff is settled under, or has purchased from, the owner or owners of John M'Kee's warrant, and settled within its boundaries, he cannot support an ejectment for land without the bounds of the survey, on said warrant, (as the legal survey,) without other and a sufficient substantive title to the same.

*Answer.*—This proposition is true in the abstract, but as applied to this case, we have already shown that if the jury believe the testimony, the land in dispute is within M'Kee's warrant, and the plaintiff, if owner of that warrant, has a right to have it returned, including the land in dispute.

5.—The defendant's not residing on the land claimed, an ejectment will not be the remedy; the wrong, if any, being trespass.

*Answer.*—This point has not been relied on by defendant's counsel; the only wonder is that it was ever made.

To the whole charge of the court, defendant's counsel excepted.

*Foster*, for plaintiff in error.
*Forward*, for defendant in error.

The opinion of the Court was delivered by

KENNEDY, J.—The plaintiff in error was the defendant below; and the first error assigned, which is the only one that raises a question of sufficient importance to make it worthy of particular notice, is founded upon the charge of the court to the jury in answer to the plaintiff in error's first point.    By this point, the court was requested to instruct the jury, that "if the warrant of Ephraim Steele be special for the land in dispute, and duly surveyed, and the land in dispute be within that survey, the plaintiff cannot recover from any title shown or set up in this case."    In order to bring to view the whole of the judge's answer to this point, it is necessary to refer to the charge itself, delivered to the jury; which has not been placed on our paper-books, though returned with the record.    In this charge the court says, "the defendant (plaintiff in error) has given in evidence a warrant to Ephraim Steele, dated the 2d of September 1773; which he has taken some trouble (for what purpose we know not) to prove to be descriptive.    That from marks of a survey on the ground, and some rough drafts of interference found in the deputy-surveyor's office, we may presume there probably was a survey on this warrant in the year 1773; but we have not the *proper* and *legal* evidence of such a survey having been made; nor is it very material.    But, to make the best of the defendant's case, we will assume that the warrant of E. Steele is descriptive, and that a survey was legally made upon it at that time, (which never has been returned,) which includes the land in dispute.    He has also shown a warrant to John M'Kee, dated the 1st of February 1793, on which an assistant deputy made the survey, up to the boundaries of which the plaintiff (defendant in error) claims.    This survey was also never returned; but the deputy-surveyor, after making a draft of it in his office, (which we have in evidence,) and showing that a portion of it was covered by the survey of E. Steele, and making a calculation of the portion not so included, seems to have done nothing further in the matter.

" The defendant's counsel, in one portion of his argument, assumed (though he denied it in another) that the plaintiff was the owner, or claimed under the warrant of John M'Kee, and had no right to go over the *reduced boundaries* of it, as stated on the survey, he has given in evidence.

" Let us assume that James M'Kee was the owner of the warrant of John M'Kee; that it was purchased at sheriff's sale by Bausman, under whom the plaintiff claims; and that they have always claimed to hold under the John M'Kee's warrant; and I have no doubt, that this is the fact; and I think the jury, after this length of time, (upwards of forty years), finding the plaintiff, and those under whom he claims, *twenty-eight years in possession*, and claiming the land under, and by virtue of this warrant, and no other person pretending a right to it for forty years, might justly presume that James M'Kee was the owner of the warrant in the name of John

M'Kee, and that the plaintiff is entitled to have it returned for his use, unless some one has a better title. Taking this to be the case, the defendant has made his case no better. He pretends no to owner-ship of the Steele survey. In 1793, when John M'Kee's warrant was taken out and surveyed on the ground, twenty years had elapsed since the warrant and survey of Steele, without its having been returned, or one act of claim or ownership·having been made under it, that we'have any knowledge of. In 1793, the commonwealth would have had a right to treat that warrant as abandoned, and any other purchaser would have had a right to take it: John M'Kee, therefore, in 1793, had a right to treat the land as vacant, and having had a portion of it included in his survey, the deputy-surveyor could have no right, *out of his own mere notion, to cut out of it* the best portion, and reduce M'Kee's survey down to seventy acres *without his leave;* nor do I see that there is any sufficient evidence, that the surveyor had such intention, even if he had the right. He never returned the survey, nor have we a *survey prepared* for re-return with this *ground cut off.* On the contrary, we have only a draft, showing the survey *as made* for M'Kee, and the interference of Steele; and a calculation of the part of M'Kee interfered with. It was his duty to show these interferences in his return, if he had made one. What evidence is there, that those claiming under this warrant and survey, ever assented to have this portion cut off; or abandoned their claim to it? In 1800, this land is levied on as James M'Kee's, describing *the very land now in dispute as part of it,* viz., " waters, improvements." In 1801, Nicholas Bausman purchased at sheriff's sale under the same description.

"In February 1808, N. Bausman's representatives leased the land to John Shuke, who, from that time, claimed to this very line in dispute, pointed it out to the defendant as the line of M'Kee's warrant, to which he claimed; defendant bounded his improvement claim upon it, and never offered to go over it, till some twelve or fourteen years afterwards, when he got it into his head, that because the survey of E. Steele was twenty years older than M'Kee's, *ergo,* he, the defendant, who had treated it as abandoned, had a right to claim up to the lines of it.

" In either view of the case, therefore, if you believe the witnesses and the testimony, the plaintiff is·entitled to recover." After thus advising the jury, the court repeat the first point of the plaintiff in error, as stated above, and in answer thereto, say, " As the court have already informed you, this is not the law. It matters not, whether Steele's warrant was descriptive, or not, it might justly be considered as abandoned in 1793, when M'Kee's warrant was surveyed. And if plaintiff's claim, when he took possession in 1808, was merely as an improver, and adverse to M'Kee's warrant, he had a right to treat them both as abandoned; and *quacunque via data,* he has a right to recover in this case, if you believe the testimony."

[Steinmetz v. Logan.]

The question presented here is, whether the owner of a warrant for land specially described therein, upon which the purchase money has been paid to the state, and a survey made thereon, without being returned into the surveyor-general's office, or any thing more whatever being done, either in regard to it or the land, for the space of nineteen years and upwards, is still to be considered as having a good subsisting right or title to the land included within the survey: or, whether he is not to be considered as having abandoned his survey and claim to the land embraced within it. Though the court below speak of the warrant in the name of E. Steele having been abandoned, it must be understood as meaning only an abandonment of the land surveyed under it, and not of the warrant itself: because, it cannot well be supposed, that the owner of such warrant would abandon the warrant; as that would be giving up all claim for and on account of the money paid by him to the state for it. He may, notwithstanding he has relinquished his claim to the land surveyed under his warrant, seeing it has never been returned into the surveyor general's office, have it surveyed upon other land still remaining unappropriated, and thus obtain full satisfaction for his money, and a right to the same quantity of land mentioned in his warrant. This is in conformity to the rule and the practice which has ever obtained at the land office; but, if all right of the owner to the warrant itself be once abandoned or relinquished, it would be difficult, perhaps, for the warrantee hereafter to secure a right or title to any land by means of it.

It must, however, I think, be admitted, that at one time, owing to the particular situation of the country, a great portion of it being wild, unsettled, and indeed it may be said, unappropriated, and the land office having been closed during the revolutionary war, great indulgence was conceded to warrantees and locatees of lands, in not requiring surveys made thereon, to be returned; so that if a survey were made upon a descriptive warrant or location within a reasonable time, after taking it out, embracing the land called for in it, the return of it into the surveyor-general's office did not seem to be regarded as of much importance towards securing the right of the party to the land so surveyed: and it was considered sufficient to enable him to hold the land, without a return thereof being made within any definite period, especially, if the deputy-surveyor had been paid his fees for doing so. See Lessee of M'Kinney v. Houser, 2 *Smith's Laws* 190; Lessee of Lauman v. Thomas, 4 *Binn.* 51; M'Cullough v. Wallace, 8 *Serg. & Rawle* 181. This notion seems to have rested mainly upon the ground, that as the deputy-surveyor was the agent of the state, and it was his duty in such case to return the survey, the owner of it ought not, therefore, to be injured by his neglect. Lessee of Lauman v. Thomas, 4 *Binn.* 59. But, the judicial opinion, in conformity to the progress of legislative action on this subject, has undergone a change; and it is now settled, that in all cases, as well in the cases of warrants, as in that of locations,

[Steinmetz v. Logan.]

whether descriptive of the land upon which they are surveyed or not, it is the duty of the owners to have the surveys returned into the surveyor-general's office within some reasonable time, otherwise, subsequent purchasers or settlers may be preferred. Though it be the duty of the deputy-surveyor to make these returns, yet, if he refuse or neglect, the party interested has it fully in his power to compel him to do so, by making complaint to the surveyor-general or the board of property. That twenty years are not more than a reasonable time for allowing a return of survey to be made, even in the case of a descriptive warrant or location, must, I think, be admitted by every intelligent and disinterested mind. We, therefore, think, that the charge of the district court to the jury on this point was correct; and that it is in perfect accordance with the doctrine and principles established and laid down in the cases of Chambers *v.* Mifflin, 1 *Penns. Rep.* 74; Addleman *v.* Masterman, *Id.* 454: Star *v.* Bradford, 2 *Id.* 384; Zerbe *v.* Schall, 4 *Watts* 138, and Gloninger *v.* Goddard, *ante,* 209. We also think, that the direction of the court to the jury on the other points, made by the counsel for the plaintiff in error, and excepted to and assigned for error, was right, and therefore we affirm the judgment.

Judgment affirmed.