61 U.S. 34
 20 How. 34
 15 L.Ed. 813
 AMOS WADE, PLAINTIFF,
v.
JACOB R. LEROY AND HENRY E. PIERREPOINT.
 December Term, 1857
 
 1
 THIS case came up from the Circuit Court of the United States for the southern district of New York, on a certificate of division in opinion between the judges thereof.
 
 
 2
 The case is stated in the opinion of the court.
 
 
 3
 It was argued by Mr. Gillet for the plaintiff, on which side there was also filed a brief of Mr. Reed, and by Mr. O'Connor for the defendants, on which side there was also a brief of Mr. Silliman.
 
 
 4
 The following notice of the points made by the counsel for the plaintiff is taken from the brief of Mr. Gillet:
 
 
 5
 POINTS.
 
 
 6
 FIRST.—Under the averments in the declaration, the plaintiff had a lawful right to prove that he was engaged in business, its character and extent.
 
 
 7
 The amount of damages sustained by the plaintiff essentially depended upon questions, whether the plaintiff was engaged in business, its peculiar character, and the extent of it.
 
 
 8
 The plaintiff would suffer more damage if deprived of a good business, than if he had none to lose.
 
 
 9
 Its character might be such that he could not attend to it at all, or only partially so, after his injury.
 
 
 10
 If his business was large, so as to require health, strength, and talents, he would lose more than if it were small, and easily attended to. He could hire a substitute to attend to the latter for a less sum than he could to transact the former.
 
 
 11
 The evidence offered was clearly admissible for these purposes, and went to show the damage actually sustained. If the plaintiff's business had been that of a day laborer, who could only earn a dollar per day, his actual loss would be far less than if he had been earning ten. If he had been employed on wages, the injury could have been ascertained by proving the compensation he received.
 
 
 12
 When engaged in his own business, the extent of his loss could only be ascertained by proving the nature and extent of his business, so as to show how much his services were actually worth to himself. If his business were small, and easily managed, the damage would be less than if it were large, and managed with difficulty. The manager of a large plantation would sustain more damage by loss of his time than the manager of a smill patch of land. A lawyer earning ten thousand dollars per annum would sustain a greater loss in being rendered unfit for business, than would a pettifogger who could only earn a hundred or two.
 
 
 13
 SECOND.—Future as well as present losses may be considered in estimating damages.
 
 
 14
 When a party loses a leg or arm, in estimating his real loss, we look to his probable future under the state of his injury, to form an opinion of the demages he has sustained. If the injury is temporary, the damages will be far less than if lasting and permanent. A flesh wound will soon heal, but a lost limb cannot be restored; both should, however, be considered in estimating the damages sustained—the loss of a limb will be continually felt as long as the party losing shall live, and hence a young person will sustain a greater injury than one whose life is nearly ended. If the mind is destroyed, the loss to a young man, who is supposed to have more years before him than an old one, is much greater than with one whose years are drawing to a close. It follows, that the probable future of the injured party is a proper subject of consideration.
 
 
 15
 THIRD.—The damage alleged in the declaration was special, as distinguished from particular damage.
 
 
 16
 Particular damage is where the particular instance of damage is avowed; special damage is where the loss follows from a specific statement of a fact, which generally or naturally results from the statement, as a cause competent to entail such a consequence.
 
 
 17
 The declaration avers that the injury affected the plaintiff's brain, and affected his memory and understanding, which were impaired thereby; and that he lost his sense of hearing; and that he would hereafter suffer much mental and bodily pain and anguish, as well as personal mortification. The damages so specified were special, but not particular—the averment is, that they resulted from the injury. If the injury complained of affected and injured his brain, and impaired his understanding, and he lost his sense of hearing, a necessary and natural consequence was, that he was incompetent to attend to any business, and especially such as that in which he was engaged.
 
 
 18
 A man who could not hear, and whose brain was injured and affected, and his memory and understanding injured and impaired, was not competent to pursue the business in which the plaintiff was engaged, even though he might have been able to attend to some kinds of business, like tending a porter's lodge, where very little memory or understanding is required. If the plaintiff were not permitted to prove these consequences, necessarily resulting from facts specifically avowed, then he would be debarred presenting a very essential part of his case, and would be prevented from recovering the whole amount of damages actually sustained. This would occasion gross injustice. When a person is made deaf, his memory and understanding injured and impaired, it is hardly possible that any pecuniary damage can make him good: he cannot be fit for business; he can do nothing and earn nothing in his business, if it should require the exercise of hearing, or memory, or understanding. Aside from the pecuniary consequences resulting from such an injury, his life must be one both monotonous and irksome, and almost wholly destitute of those pleasures and that happiness which those in full health, bodily and mentally, must ever enjoy.
 
 
 19
 FOURTH.—When the action can be maintained without specifying any particular damage, it is not necessary to aver any particular instance of damage.
 
 
 20
 When the law implies damage, there can be no reason for stating it with particularity. If a person loses an eye, an ear, a limb, or his general health, the law implies damage, the same as if deprived of his property or any other legal right. Words actionable in themselves imply damage, and none need be proved; but if actionable only by reason of some consequence which might or might not follow, then the particular damage must be averred and proved. The loss of hearing, of memory, and understanding, imply injury, and necessarily and naturally result therefrom, and no particular damage need be averred or proved. This change in the condition of a person cannot be made without producing injury to him in his pecuniary circumstances and in his enjoyments. Such an injury would lessen, if not destroy, his ability to maintain and support his family by his own exertions.
 
 
 21
 It required no averment in the declaration to apprise the defendant that such consequences must result from the injuries specified. They are so necessary and natural that no one could mistake them. Every common understanding must arrive at the same conclusion.
 
 
 22
 FIFTH.—The evidence offered tended to prove necessary and natural injurious consequences arising from the injury to the plaintiff, within the settled rules of law.
 
 
 23
 The courts have furnished precedents that clearly sustain the offer of the plaintiff below, and so do the elementary writers. Mayne on Damages, the latest and best English writer, says:
 
 
 24
 'Special damage must always be expressly averred and proved, when it is so much the gist of the action, that without it no suit could be maintained.'—P. 314.
 
 
 25
 'It is not, however, necessary to state or establish particular instances of damage.'—P. 315.
 
 
 26
 'In all other cases, whether the action be on contract, or in tort, if the facts involve a legal injury, no actual damage need be stated.'—P. 15.
 
 
 27
 'In contracts, too, there are certain damages which the law will presume; as, for instance, in an action for not delivering goods; that the plaintiff had to buy others at a loss. * * * The extent of the loss must be proved; but no notice need be given of the species of loss which will be set up. But it is different where the injury complained of is merely secondary and consequential damage.'—P. 316.
 
 
 28
 'In an action for slandering a man in his trade, when the declaration alleges that he thereby lost his trade, he may show a general damage to his trade, though he cannot give evidence of particular instances.'—P. 317.
 
 
 29
 'So if one, not a carpenter, sell timber which the purchaser uses to prop up his building, and, by reason of the timber being defective, the building fall and be destroyed, if the seller acted in good faith, and was ignorant of the defect, he will only be liable for the difference in price between good timber and that sold. If, however, the seller was a carpenter, who sold the timber for the express purpose of propping up the house, then he shall be liable for all the damage done to the building.'—Sedgwick on Damages, 65.
 
 
 30
 He quotes from Chitty, at p. 575, where the rule is laid down as in the decisions I have copied.
 
 
 31
 These views are sustained by various decisions.—Dewint v. Wiltse, 9 Wen., 325.
 
 
 32
 Defendant hired plaintiff's ferry, and covenanted to maintain and keep the same in good order; but, instead of doing so, he diverted travellers from the usual landing to another landing, owned by himself, by means of which a tavern stand, belonging to the plaintiff, situated at his landing, was so reduced in business as to become tenantless. It was held that the plaintiff could recover. The court determined that the damages proved were a legitimate claim, and the legal and natural consequence of the breach of the covenant.
 
 Dickinson v. Boyle, 17 Pick., 78, 79:
 
 33
 'Where the act complained of is admitted to have been done with force, and to constitute a proper ground for an action of trespass vi et armis, all the damage to the plaintiff, of which such injurious act was the efficient cause, and for which the plaintiff is entitled to recover in any form, may be recovered in such action, although in point of time such damage did not occur until some time after the act done.
 
 
 34
 'Where special or peculiar damages are claimed, such as are not the usual or natural consequences of the act done, it is proper to set them forth specially in the declaration, by way of aggravation, that the defendant may have due notice of the claim.'
 
 Squier v. Gould, 14 Wen., 159, 160:
 
 35
 'Where the damages actually sustained do not necessarily arise from the act complained of, and consequently are not implied by law, in order to prevent surprise to the defendant, the plaintiff must state in his declaration the particular damage which he has sustained, or he will not be permitted to give evidence of it upon the trial.'
 
 Vanderslice v. Newton, 4 Comst., 130, 132:
 
 36
 Towing a boat from New York to Albany, or as far as it could but for the ice.
 
 
 37
 'With respect to the damages, the general rule in questions of this nature is, that the plaintiff is entitled to recover, as a recompense for his injury, all the damages which are the natural and proximate consequence of the act complained of, (2 Greenl. Ev., § 256.) Those which necessarily result from the injury are termed general damages, and may be shown under the general allegation of damages at the end of the declaration. But such damages as are the natural, although not the necessary, result of the injury, are termed special damages, and must be stated in the declaration, to prevent surprise upon the defendant; and being so stated, may be recovered.'
 
 
 38
 Ward v. Smith, 11 Price, Exch. R., 19.—(Eng. Exc. R., 19:)
 
 
 39
 Suit in assumpsit for not performing an agreement to let the plaintiff into possession of certain apartments and furniture.
 
 
 40
 The plaintiff proved that his wife was a milliner, and lost business in the best part of the season by not being permitted to take possession.
 
 
 41
 'A plaintiff in such an action may give evidence by particular loss sustained by breach of such an agreement, if he have stated loss generally in his declaration. Therefore, evidence of loss of business by plaintiff's wife in her trade of milliner held admissible, in such a case, as evidence of general damage, where no special damage on that ground was laid in the declaration, nor any customers named, nor any averment of her business introduced.'
 
 
 42
 Baron Graham expressed himself fully upon this point.
 
 Hutchinson v. Granger, 13 Vt., 386:
 
 43
 'General damage, or such as is the common or ordinary consequence of the act complained of, need not be specially alleged in the declaration; and if some portion of the plaintiff's general damages be alleged, this will not preclude him from giving evidence of other general damage.
 
 
 44
 'In actions for flowing land, the injury, i. e., the flowing the land, and the means by which it was done, must be substantially alleged; but any general damage, such as rendering the land wet and unproductive, and more difficult to cultivate, and destroying crops, either in the process of growth or harvesting, need not be alleged.'
 
 
 45
 Lincoln v. Saratoga and Schenectady Railroad Company, 23 Wen., 425:
 
 
 46
 Suit by passenger for injury to his person, when travelling upon defendant's road. Nelson, J.
 
 
 47
 Opinions as to the value of plaintiff's time had been given in evidence, and new trial granted on that account.
 
 
 48
 'Even with the jury, the damage beyond actual expenses at best rise but little above conjecture; it is so in every case where they are called upon to estimate the loss of the plaintiff's time. How serviceable it might have been to him, depends upon a calculation of the changes and vicissitudes of life, the casualties and fluctuations of business, utterly beyond the reach of human foresight. The most they can do is to bring to the discharge of their duties a careful and diligent consideration of the particular case, a knowledge and experience of the general condition and business affairs of mankind, to which all are more or less subject, a sound and enlightened judgment, and honest desire to arrive at truth and justice between the parties. No more can be expected; no less, justified. The result will usually be an approximation to reasonable indemnity, as near as the interpretation of human tribunals will admit.
 
 
 49
 'I am also of opinion that some of the questions put in respect to the effect of the injury to the limb were pushed into consequences and conjectures too remote for the subject of judicial investigation. The present and probable future condition of it were proper matters for inquiry; but the consequences of a hypothetical second fracture were obviously beyond the range of it, and calculated to draw the mind of the jury into fanciful conjectures.'
 
 Driggs v. Dwight, 17 Wen., 71:
 
 50
 'Where a party agrees to demise certain premises to another, who breaks up his establishment, and proceeds with his family and furniture to the place where the premises are situate, and the landlord refuses to give possession, the tenant is entitled to recover the damages sustained by him by such removal of his family and furniture, although special damage is not alleged in the declaration.'
 
 
 51
 The English cases sustaining the principles contended for are referred to in Mayne on Damages, at the pages referred to in that work.
 
 
 52
 Mr. Silliman and Mr. O'Connor made the following points:
 
 
 53
 First Point.—Assuming, for the sake of the argument, that a person suffering a personal injury which disqualifies him from prosecuting a particular business in which he is engaged, may recover in an action ex contractu or ex delicto brought against the party from whose willfulness or negligence such injury resulted, the value of the employment thus lost, or that, in some more loose or general way, the nature of such business may be taken into consideration by the jury in estimating damages, then it is submitted that the established rules of pleading and evidence require, as an indispensable condition to the admission of proof, that the business and the fact of its loss be particularly set forth in the declaration.
 
 
 54
 I. Under a general allegation of damage, the plaintiff can only recover general damages. General damages are such as necessarily result from the injury alleged under the circumstances set forth. These the law presumes, and they need not be alleged with any particularity, nor even proved.
 
 
 55
 II. Special damages are such as result from some cause not notified to the defendant by the very description of the injury complained of, as necessarily resulting from it. Any fact which rendered it more hurtful to the plaintiff than it would have been to any other person, under the same circumstances set forth, is a special damage; and, consequently, it cannot be given in evidence, unless specially set forth in the declaration. The object of this rule is to prevent surprise. (1 Chitty's Pleadings, pp. 395, 396, 397, 398; 2 Greenleaf's Ev., §§ 254, 278, and notes; Sedgwick on Damages, 2d edition, p. 575.)
 
 
 56
 III. This rule is of universal application. No case has been found, nor any dictum of an elementary writer, recognising any distinction, in this respect, between actions ex delicto and actions ex contractu, or between the different forms of action, or between the various causes of action. (3 Bouvier's Institutes, § 2872; J. S. Saunders's Pleadings and Ev., 136, 800; ib., 83, 105, 151, 906, 344; ib., 865, 520, 653, 660; Pettit, v. Addington, Peake's N. P. Cases, 63; Lowden v. Goodrich, ib., 46; Westwood v. Cowne, 1 Starkie's R., 172; Bodley v. Reynolds, 8 Ad. and Ellis, 780; Boyden v. Burke, 14 How., 575; Kendall v. Stokes, 3 How., 87, 90, 102; Strang v. Whitehead, 12 Wend., 65; Pritchett v. Bovey, 1 Cr. and Meeson, 778; Jones v. Lewis, 9 Dowlings Pr. Cases, 150; Richardson v. Chasen, 10 Ad. and Ellis, N. S., 756, 759; Patten v. Libby, 32 Maine, 378; Vanderslice v. Newton, 4 Comstock R., 132, 133; Dumont v. Smith, 4 Denio, 322; Alston v. Huggins, 3 Brevard, 188; Dickinson v. Boyle, 17 Pick., 79; Furlong v. Polleys, 30 Maine, 493; Lewis v. Calder, 8 Burr. Penn. Rep., 479; Bogart v. Burkhalter, 2 Barbours S. C. R., 525; Squier v. Gould, 14 Wend., 160.)
 
 
 57
 IV. In slander and libel, when the action lies only by reason that the defamatory matter complained of touched the plaintiff in some particular office, employment, or relation, the averment of that office, &c., is not called by pleaders an averment of special damages. It is a part of the cause of action; but being notified to the defendant, it may be proved, and, of course, may have its just weight with the jury. Here there is no danger of surprise. (Ingram v. Lawson, 6 Bingh. N. C., 212; ib., 8 Scott, 775; 9 Carr and Payne, 326; 1 Selden's N. Y. Rep., 20; Donnell v. Jones, 17 Alabama, 692 to 695; S. C., 13 Alab. R., 509, 510; Delegall v. Highley, 8 Carr and Payne, 444; Rollin v. Stewart, 25 Eng. L. and Eq. R., 345.)
 
 
 58
 V. In cases of defamation, where the matter is not actionable generally, nor actionable so as to give a right to general damage, by reason of its touching the plaintiff in his particular office, employment, &c., the plaintiff is obligated to aver in his declaration the special damage on which he relies, and to prove it at the trial. All the adjudications arising under this head in our law, whether on demurrer, or in arrest of judgment, or for variance at the trial, are so many illustrations of the rule contended for in this point. (Malachi v. Soper, 3 Bingh. N. C., 371.)
 
 
 59
 Second Point.—As the defendants, on being charged with the injury alleged in the declaration, could not learn, from anything in the narrative of its occurrence and consequences, that the plaintiff was connected with a particular business carried on in North Carolina, it would be a great surprise upon them to allow evidence of that fact. Therefore, the evidence mentioned in the first division should be excluded.
 
 
 60
 I. There is nothing on this subject contained in the declaration, which, according to the precedents and authorities, could be otherwise regarded than as a general averment that the plaintiff was disabled by his hurt. (Rogers v. Nowill, 11 Jurist, 1039; Malachi v. Soper, 3 Bingh. N. C., 371; 1 Strange, 666; W. Jones, 196; Buller's N. P., 7; 1 Sid., 396; 1 Saunders's R., 346; Linden v. Graham, 1 Duer, 670.) For proper pleading, see Collet v. Lond. and N. W. Railway Co., 6 Eng. L. and Eq., 305; Brewer v. Drew, 11 M. and Welsby, 626, 630; Hodsoll v. Stallbrass, 9 Car. and Payne, 63.
 
 
 61
 II. There was no difficulty in stating in the declaration the special consequential injury offered to be proven. It was not a violation of decency to place it on the record; it did not tend to burdensome prolixity; it was known to the plaintiff, and quite susceptible of being accurately described by him. There was, consequently, no excuse for its suppression. (2 Williams's Saunders, 411, note 4, 8 T. R., 133; 1 Starkie's R., 172; Lowden v. Goodrich, Peake's N. P. Cases, 46; 2 Greenleaf's Ev., § 278; Per Kenyon, L. Ch. J., 8 T. R., 133.) Anomalous Cases. (Driggs v. Dwight, 17 Wend., 71; Ward v. Smith, 11 Price, 19; See Tullidge v. Wade, 3 Wils., 19.)
 
 
 62
 III. This evidence is the more objectionable, if unaccompanied by any proof of the particular value of this large and extensive business of distilling and manufacturing turpentine, in which the plaintiff was engaged. If such evidence must be admitted, it would be much fairer to admit it with particular and certain proof of the value of the business, than in a vague, loose, and indefinite form. Far better that the defendants should be tried without notice, on evidence appealing to the judgment of the jury, than on an inflated address to their imaginations. (Fairman v. Fluck, 5 Watts, 518.)
 
 
 63
 Third Point.—Evidence that the injury would permanently disqualify the plaintiff from pursuing any business, was objectionable in a twofold point of view. In the first place, the declaration does not affirmatively allege that the injury would produce any such result, or that the defendant was a person engaged in any business; and secondly, inasmuch as in speaking of bodily pain, &c., the declaration has a future aspect, and the general allegation of consequent incapacity to attend to affairs is confined to the past; the idea of any probable future incapacity is impliedly negatived. The point involved in the second division ought therefore to be certified in favor of the defendants. (Hodsoll v. Stallbrass, 9 C. and Payne, 63; S. C., 3 Perry and Davison, 200; Thompson v. Wood, 4 Ad. and Ellis, N. S., 497.)
 
 
 64
 Mr. Justice CAMPBELL delivered the opinion of the court.
 
 
 65
 This case comes before this court upon a certificate of the judges of the Circuit Court of the United States for the southern district of New York, of their division in opinion upon questions arising in the trial of the cause in that court.
 
 
 66
 It is an action against the owners of a steam ferry boat, plying between the cities of New York and Brooklyn, for the transportation of passengers, by the plaintiff, a passenger, who suffered an injury in consequence of a collision between two boats belonging to the defendants, and which was attributable to the mismanagement of the servants and agents to whom their navigation was intrusted.
 
 
 67
 The declaration charges, that the plaintiff was wounded on the head by a blow from a piece of iron that had been broken off the boat on which he was a passenger, in the collision, and thrown against him. That, in consequence of the wound, his brain was affected and injured, so that his understanding and memory were impaired. That for some time he was insensible, and his life despaired of; and before his recovery, he suffered much mental and bodily pain. That he was detained in New York, at a distance from his home, and subjected to much expense about his care, support, and maintenance, and had been hindered and prevented for a long period from transacting and attending to his necessary and lawful affairs, by him during all that time to be performed and transacted; and lost and was deprived of great gains, profits, and advantages, which he might and otherwise would have derived and acquired.
 
 
 68
 The plea was the general issue.
 
 
 69
 Upon the trial, the plaintiff offered to prove, 'that before and up to and at the time of the alleged injury, the particular business in which he was engaged was that of a distiller and manufacturer of turpentine, and that he was largely and extensively engaged in that business.' The plaintiff also offered 'to prove, by a physician who had attended the plaintiff, that when the plaintiff, after his convalescence, left New York to return to North Carolina, he (plaintiff) could not safely attend to any business or occupation, and that the witness deemed it imprudent and indiscreet for the plaintiff thenceforth to devote himself to any business.' To this evidence the defendants' counsel objected, on the ground that the declaration of the plaintiff did not contain any specification of such business, or of its nature or extent, or contain any statement that the plaintiff was obliged or did relinquish or abandon the same. The judges were divided in opinion as to the admissibility of such evidence, and have certified the questions for the decision of this court.
 
 
 70
 The precise object for which this evidence was adduced is not stated in the certificate of the judges; but if the evidence tends to support any issue between the parties, or has a direct connection with other evidence competent to maintain the averments of the declaration, either to illustrate its meaning or to ascertain its probative effect, it cannot be rejected as impertinent, or as founded upon matter that does not appear in the pleadings of the cause. The evidence objected to conduces to prove that the plaintiff was seriously injured; that he had been confined in New York, at a distance from his home, and had incurred expense in consequence. That, before that time, he had been concerned in conducting a business that required a degree of mental and bodily vigor, and that his time was of some pecuniary value; or, that he had suffered a loss of some profit; and that, after some detention in New York, he had returned to his house in an infirm condition—so infirm that his medical attendant and adviser deemed him incapable of pursuing any ordinary business or occupation, and had advised him to abstain from personal exertion.
 
 
 71
 This evidence would certainly assist a jury to determine that the plaintiff had sustained an injury of no slight character—an injury to his person, and which was followed by expense, suffering, and loss of time, which had for him a pecuniary value.
 
 
 72
 These were the direct and necessary consequences of the injury, and sustained strictly and almost exclusively as an effect from it. This evidence may have an application without any inquiry into any remote or contingent consequences which could not have been foreseen, or which were peculiar to the circumstances or condition of the plaintiff. The record does not inform us that the evidence was designed to aid in such irrelevant inquiries, and we cannot presume that, if admitted, the court would allow any misconstruction of its legal import, or any use of it by the jury, contrary to law.
 
 
 73
 The opinion of the court is, that the evidence is competent, and we direct that the certificate to the Circuit Court shall be made accordingly.