Mr. Justice Hagner
delivered the opinion of the court.
This was an action at law brought by the plaintiff to recover damages for injuries sustained by him in falling into an opening in the pavement on Gr street, opposite the Biggs House in the city of Washington.
The case in brief, as presented on the part of the plaintiff, is that in the month of November, 1881, the proprietors of the Biggs House determined to place a boiler beneath the pavement for the purpose of warming, and in other ways ministering to the uses of that establishment. An opening was made in the pavement about three or four feet to the west of the ladies’ entrance on Gr street. The boiler was placed in its position beneath the pavement, and then the opening was closed with the exception of a place left by a sort of man-hole or light, which was walled up, and which, when completed, except for its cover, presented an opening two feet one inch in width from north to south, and about three feet two inches from east to west. After this opening for the manhole had thus been left, the plan was to cover it permanently with something which would afford some *131 illumination to the vault beneath. But it appears that this permanent cover was not ready, and the workmen in charge of the work placed over this hole what was called a mortar board, composed of about four planks of one-inch stuff, across which, at intervals of six inches from the respective ends, cleats Avere nailed, these cleats being also made of one-inch stuff. The workmen placed that over the hole and it was large enough to overlap the hole all around.
There is some conflict in the evidence as to the length of time during which this covering remained there. The engineer says it was there from fifteen to eighteen days. The workman who worked on the vault says it was there from five to nine days, and in another part of the testimony there Avas something said going to show that the time was shorter than that. But the justice trying the case said that the evidence was that the cover was there from five to ten days.
On the night of the 9th of December, the plaintiff, who was a practicing physician, and said to be in perfect health, weighing 190 pounds and unmarried, was walking with his sister on this south side of G street from Fourteenth street in the direction of Fifteenth street. His sister was on his left arm. They passed the ladies’ entrance and just about three feet to the west of the extreme part of that porch where this hole commenced. As they were passing west, the lady passed between this hole and the iron railing skirting the area of the Biggs House, that space being about three feet wide. The plaintiff walking with her stepped upon this mortar board; it tilted with Mm, and, as he fell down, his right leg entered this hole as far as the trunk of his body. His left leg was curled or twisted under him in some way, in a manner that cannot very well be described. He says that as he fell this board flew up and struck him in the back. If he is right in that, then he must have trodden on what might he called the southwest corner of this board, which, there in that place, failed to cover entirely this hole, having been displaced in some way or other.
He experienced great pain, his leg was lacerated and *132 bruised and he was unable to extricate himselfj but was lifted out by some passers-by. He was sensible also of a severe shock at that time, but was, after some time, able to go home; and his physician, when he came the next day, encouraged him to think, being a physician himself, that he would be well at the end of about two weeks. But just about that time new symptoms developed, and he describes these tingling sensations which admonished him that it was an injury to the spinal cord. ■
He then went from one physician to another without deriving any benefit, and the result of it all was, according to the evidence taken at the trial, that he became a physical and almost a mental wreck. He had been obliged, from the defective memory superinduced by this, to give up his business, and he was in such a physical condition that Dr. Sayre, one of the physicians who attended him, says that when he came and talked about his case he could not restrain himself from tears but wept like a child; and all the evidence shows that this stalwart man had become as it is alleged in their testimony.
The case had been tried previously and the jury disagreed, hut on this occasion, however, a verdict was obtained for $15,000.
In the course of the trial, a number of exceptions were taken. Several of them were to the refusal of the court to admit evidence as to the condition of the defendant, and others to the admission of evidence. The exceptions to the ruling of the court, about the admissibility of the evidence, are all commented on and criticised by the counsel for the plaintiff, because of the form in which they are presented here, and we are obliged to make this criticism here.
The first is a sample of the phraseology used in each.
“And thereupon the plaintiff, being on the stand and a witness in his own behalf, was, by his counsel, on direct examination, asked the following question (and the question is given), to which question, at the time the same was asked the witness and before he answered, the defendant, by its counsel, objected; but the court overruled the objection and *133 permitted the question to be asked, and the answer of the witness thereto to be taken; and to the ruling of the court in permitting said question to be asked, the answer thereto taken, and the answer itself, the defendant duly entered an exception.”
It is thus obvious that there is no information given to this appellate court as to the ground of the objection, or why, whether for incompetency, inadmissibility, or upon what ground, this objection was made.
The law on this subject was. settled more than forty years ago in the Supreme Court of the United States, and is well understood; but, as in every jurisdiction, it has not always been observed here. In 3 How., 530, in the case of Camden vs. Doremus, Mr. Justice Daniel uses the following language :
“Before entering upon an examination of this agreement, and of the questions which it has given rise to, it is proper to dispose of an objection by the defendant in the court below, which seems to have been aimed at the entire testimony adduced by the plaintiffs, hut whether at its competency or relevancy or at its regularity merely, that objection nowhere discloses. After each deposition offered in evidence by the plaintiffs to the jury, it is stated that to the reading of such deposition the defendant, by his counsel, objected, and that his objection was overruled. A similar statement is made with regard to the record of the suit instituted in the court of Hinds county against Calhoun, the maker of the note, and offered in this cause as proof of due diligence.
With regard to the manner and the import of this objection, we would remark that they were of a kind that should not have been tolerated in the court below, pending the trial of the issue before the jury. Upon the offer of testimony, oral or written, extended and complicated as it may often prove, it could not be expected upon the mere suggestion of an exception which did not obviously cover the competency of the evidence, nor point to some definite or specific defect in its character, that the court should explore the entire mass for the ascertainment of defects which the ob *134 lector himself either would not or could not point to their view. It would he more extraordinary still if, under the mask of such an objection, or mere hint at objection, a party should be permitted in an appellate court to spring upon his adversary defects which it did not appear he ever relied on, and which, if they had been openly and specifically alleged, might have been easily cured. It is impossible that this court can determine, or do more than conjecture as the objection is stated on this record, whether it applied to form or substance, or how far, in the view of it presented to the court below, if any particular view was so presented, the court may have been warranted in overruling it. We must consider objections of this character as vague and nugatory and as, if entitled to weight anywhere, certainly without weight before an appellate court.”
Now, unquestionably, according to this doctrine, which is but the enunciation of the opinion given by Chief Justice Marshall more than twenty years before, sitting in that same court, and according to the universal practice in all jurisdictions, so far as we know, this should be observed; that when objections and such exceptions come here, the court considers itself under no obligation to explore the whole record and try to conjecture what the trouble was. Nevertheless, as I have stated, the rule has not been strictly observed here, and in this case, we have not felt disposed to refuse to consider these exceptions, but have carefully gone through them all.
The first one to which I allude here was a question to the plaintiff when on the stand, as a witness in his own behalf as to whether he was not at that time, and had not been prior to that time, a contributor to medical journals published in this country and in Europe.
Then there was a question as to the amount of his income and the objection was made that neither of these were admissible to any issue in the case; that their only effect was to show that he was a man of eminence in his profession, which would create a prejudice which did not belong to the case.
*135 If a person were a painter or sculptor of great eminence who had achieved that eminence by the work of his trained hand, in the case of an injury which had perhaps paralyzed that hand, he ought to be compensated in a different degree from a person who was amere dandy and did nothing with his hands but twirl his mustache or swing his cane. Anyone using common sense would say that the compensation should be based upon what he has shown to have lost; and to do that he must first show what he had done.
A case singularly like this one, and presenting almost the identical point which is raised here, is reported in 2 Black, 590, the case of Nebraska City vs. Campbell. The suit was brought by the plaintiff to recover damages for injuries received in one of the streets of the city. The plaintiff was a practicing physician, and in the course of the trial evidence was given, after objection, that he was engaged in extensive practice at the time of the injury, and, also, that it was a period of great sickness in the community. Judge Nelson, after discussing the responsibilty of the municipality proceeds to consider the objection and disposes of it in these words:
“ The declaration states that the plaintiff was a physician at the time of the injury, and after describing the nature and extent of it, adds that by reason thereof he was greatly bruised, sick and lame, and so continued for a long space of time, to wit, for the space of six weeks; and during all that time suffered great pain, and was prevented from transacting his ordinary business as a physician during that time.
“Now the evidence in question was relevant and pertinent with a view to show the extent and amount of the ordinary business of the plaintiff in his profession, of which, it is averred, he was deprived during the time of his disability, and laid a foundation which enabled the jury with some degree of certainty to ascertain, the direct and necessary damages sustained from the injuries.”
He then refers to the case of Wade vs. Leroy, reported in 20 How., 34, where injuries were received by the plaintiff by the careless navigation of a ferry boat, and the court *136 held “ that the proof of the ordinary business in which the plaintiff was engaged, and that he was largely engaged in it was admissible and pertinent upon the question of damages, though the fact was not set out in the declaration.”
There can be no question that the judge ruled properly in admitting the evidence.
The third exception is to the following question:
“ State the condition of your health during the past six months or year comparatively, as regards your health during the years 1881 and 1882; that is, in other words, whether you have been gaining in health or whether you have been losing in health.”
The court properly held that that was not incompetent.
The fourth and fifth exceptions were to questions asked physicians as to what they supposed would be the course of the complaint under which the plaintiff was laboring, and whether the disorder would probably be permanent. ' These inquiries were ruled to be admissible by the judge, and we think properly.
Another exception, which it is hardly necessary to notice, is this: A letter was introduced addressed to Francis Riggs, Esq., and it was proposed to prove that it was addressed to him as a representative of the Riggs estate. There could be no question about the propriety of that.
The next exception which we will notice is this: A witness was produced on the part of the plaintiff, and on the cross-examination he was allowed to he shown a letter which had been addressed by the plaintiff to Mr. Riggs, in which he stated his damages, as it was argued by the defendant, and rated them at a much lower figure than he was disposed in this trial to rate them.
After that had been introduced, the defendant’s counsel, on cross-examination, asked: “In what condition did you find this man when you delivered the reply?” The plaintiff, without stating any reason, objected to that question, and it was excluded; it is not stated why, although if it was admissible for any purpose, it ought to have been admitted under such a general objection. But it is pretty ap *137 parent it was excluded, because, as it was insisted upon in the argument here, it was not proper cross-examination, and we think there is no doubt that the ruling was right. The rule is different in England; but here it may be said to be an impregnable rule of practice that the party is confined in his cross-examination to the subject-matters entered into in the examination-in-chief. If it was important to the defendant to establish this, it was in his power to recall the witness as his own at another stage of the case.
The ninth and tenth exceptions are taken to this: The plaintiff endeavored to show that a considerable interval, namely, from the 29th of November, at least, up to the 9th of December, when this accident occurred, had elajised between the arrival in Georgetown of this very metal cover, with thick glass in it, and the time it was put in place; and during all that time there was neglect to put it there. It was objected that that was a matter of no consequence in the case.
We cannot agree to that. We think it was highly material as to a matter which might be of considerable importance, touching the question of the defendant’s negligence, namely, as to how long this hole remained in that way. We think there can be no question that the testimony on that point was evidence tending in the direction of an elucidation of that matter.
This disposes of all the exceptions to the evidence. Then, all the evidence having been closed, the defendant asked the court to instruct the jury that they must give a verdict for the defendant upon the grounds, first, of the want of proof of negligence on the part of the defendant; and second, of the ample proof, by the plaintiff’s own witnesses, of his contributory negligence. And that renders it proper to say a word as to what we conceive to be the law of the case.
It is a settled thing in this jurisdiction, too well settled until overruled to be doubted, that this municipality is responsible for the safe condition of its sidewalks, and that if an accident happens to a passer-by in consequence of this imperfection, an action will lie against the District. But *138 it is also true that the District is not an insurer. It is not answerable unless it be shown either that the authorities had notice of the defect, or that it was so notorious and conspicuous in its character, and had continued so long that the authorities charged with the inspection of the streets would, in the proper performance of their duties, have known it; in which case due notice or knowledge will be imputed to the District.
It also is true that in this matter of imputing notice, the question depends upon the appearance of the object causing the injury. If it is a large hole, the authorities should know it sooner than they would in the case of a small imperfection in the streets. If it was in rather a sparsely populated part of the city, for instance, in the neighborhood of the Eastern Branch, where policemen go very seldom, it would be much more difficult to impute notice to the District than if it happened in a crowded thoroughfare where people are passing at almost all hours of the day and night.
In this case the proprietors of the hotel undertook to excavate at this place and put in that skylight. They left this hole open for a length of time, a number of days, at least. The place was three feet, not more than that, from one of the public entrances of this large hotel. It is insisted upon the part of the defendant that it was placed in a safe condition, but that it was rendered unsafe by some accident or design with which the defendant had nothing to do, and that it had not continued long enough to give notice to them.
Now, what was the proof in the case ? For we are not trying it here upon its facts, but we are determining whether there was enough evidence to go to the jury to support their verdict if they found (as they did) that it was not properly covered, or, if properly covered and protected at the beginning, that it had been disturbed so recently that notice could not be imputed to the District.
It is said that the mortar board placed there was a sufficient protection; that it was made of good material (there is no impeachment of that), and that it had for a long time, *139 perhaps as many as fifteen days, proved sufficient; and that it might reasonably have been supposed to be sufficient. It is also said that the man who placed it there proved in the ease that he was a competent person, accustomed to such matters, and that he considered it safe, and that that was and is a sufficient determination of the question as to whether the cover was originally sufficient.
We cannot agree with that view of the case. What the public is entitled to is not something that somebody else thinks is sufficient, but something that is sufficient. It is entitled to the real thing, and not the simulacrum of it; and it would never do to say that it will be sufficient for the man who placed it there to say that he did his duty; as he will almost always say, if in addition to being a fallible mortal in one respect, he is fallible in another, not being ready to admit his own error. The fact that he says that he placed it there properly, if admitted to be conclusive, would close the mouth of everybody; it would close the mouth of the injured party, and the jury would be unable to get at what was the real fact.
Now it is true that a great many people passed there in safety before this accident happened. The pitcher goes to the well very often before it is broken, but when it is broken, somebody certainly first breaks it. There is not the slightest pretense that this man wanted or tried to break his limb. There is not the slightest evidence of any negligence on his part in treading on this board which was placed there by the District authorities or their agents, not for the purpose of warning the man off and telling him that he should not walk on it, but it was rather placed there as conveying the idea that he might walk on it with safety, for it was not a barrier, with a lantern placed there to warn him to keep away from that spot, but it was something to invite him to walk there.
It is testified in the case, and was brought out on the cross-examination, I believe, by the defendant, that the engineer of the Eiggs House was in the habit of coming up on that pavement, sliding the board off on the adjacent flag *140 stones and going down that hole when he wanted to do something with the top of his boiler, and then restoring it. And it is argued by the defendant and insisted, that probably this accident occurred in that way, by this man having removed it, and after removing it, neglecting to replace it.
The question for the jury was whether that was made sufficiently safe in the beginning, if it was liable to be removed in that way.
Of course the District cannot be regarded as an insurer, so that if a cyclone came there and blew this covering off it would be responsible. Nothing of thé hind was meant. But the common sense view of it is that it should be fastened underneath as all these strong iron sky-lights are required to be by the laws of the corporation. It was liable to be kicked away and pulled away by children, and that is a fact to be taken into consideration, because in the Turn Table Cases the Supreme Court held that where a railroad had built a turn table in its private ground, where nobody but its employees had a right to enter, and several children had managed to stray in there and hurt themselves, it was negligence on its part in allowing the thing there so that a child could meddle with it.
It is said further that this party is disentitled to recover because of his own contributory negligeuce. It is said in the spirited language of the counsel that this board was vocal with an advertisement of its own danger, and that it was' exclaiming to the public: “ Beneath me, here is a dangerous hole.”
Did it express that language and nothing else? When that man came up from the boiler below and slid this cover off on the adjacent flagstone, was that board, when it was on this other flagstone, evidence that there was a hole beneath it ? Far from saying that, it merely said this; ‘ ‘ Here is a very clumsy sort of an arrangement permitted in a great city near the door of a great hotel.”
Nobody would say that if a person should stumble against such an obstacle he could be charged with contributory neg *141 ligence, and we think the court was right in refusing to take the case away from the jury on that ground.
A large number of prayers were offered, probably fifteen; number 1 to number 5 on the part of the plaintiff. Those offered for the plaintiff were granted. No exception was taken, and we think they were right and presented the case fairly. The first six prayers offered by the defendant raise a question which is a settled one in this jurisdiction, and which was not argued here, namely, whether or not this municipality is responsible in such a case as this. They were not designed to be argued here, but used elsewhere.
Then, as to the rest, we may say this: So far as they were right, they are included in the very admirable charge which the presiding judge gave. So far as they are not included in that charge, they are wrong, and therefore properly rejected on either ground. The seventh, eighth, ninth and tenth prayers are all provided for in that charge. The eleventh prayer raises a point which has been expressly overruled, namely, if this was done by private people, the sufferer must seek a remedy against the private party, and not the municipality. Of course we cannot hold that, as we have held the reverse here repeatedly.
The twelfth and the thirteenth prayers are granted in the charge. The fourteenth and fifteenth prayers have a radical defect, namely, that each assumes that the plaintiff had knowledge of the defect; whereas, there is not a scintilla of proof that he had such knowledge. These two prayers were, therefore, properly rejected.
So with the sixteenth. Exceptions were taken to this, and, as we have said, all of them were properly rejected, either because the substance of them had already been provided for in the charge, or because they were wrong in themselves.
The judge then gave a charge. He states in the commencement that it is the same which ho had given in the previous trial with some minuteness. It is an admirable statement of the case, fair and impartial, and gives an intelligible statement of the whole matter and of the points *142 of law, and we concede that it covered all tbe essential grounds.
One exception is made to the charge, namely, that there was no proof in the case that a permit had been granted to the proprietors of the Riggs House to open this ditch or leave it open, and that it must be presumed or might be presumed under these circumstances that such a permit had been granted. Several sentences in the charge have reference to that and are made the subject of exception.
We think the exception is not well taken. It is the law of this jurisdiction that building regulations have the force of law in many particulars. Before this city was laid out, they were incorporated in the laws of the State of Maryland, which ceded this District; and one of the first acts of President Washington was to say that these building regulations should remain in force, or many of them. One of those regulations was that nobody should break a sidewalk without a permit from the District.
It is proved that for five weeks at least the owners of that property had broken that sidewalk for a greater or less degree. If they did not have a permit then they subjected themselves to a fine, not only the owner, but the contractor as well, and all persons concerned; and, on the other hand, to suppose that they had not a permit, is to impute to the officers of the corporation a gross neglect of duty, which could not be of course presumed. The presumption must be the other way.
There remains but one other question, and that is the amount of damages awarded. It is insisted that the damages were excessive under the circumstances, and that we ought to reduce them. The damages were estimated by the jury at $15,000. It is proved in the case that this man’s profits from the practice of his profession amounted to $2,-500 a year. The accident happened in 1881, and the case was tried in 1885. Four years have nearly elapsed, and that would make a loss to him of $10,000. This verdict is for all time; he cannot sue again for it. He was more than fifty-four years of age and had come here to practice, and *143 we naturally presume that the reputation he would make for himself would increase his income. We cannot, in the case as submitted to us, see that the verdict is excessive. If the evidence is true, he is a ruined man, and this was caused by the culpable negligence of the party in charge of this pavement. But this is a question more properly for the court below.
We should be very adverse to interfering, unless we see that the damages are so shockingly excessive as to indicate that the jury were led, through their sympathies, to award too large an amount, or acted under some misconception of their duty.
We see no feature of that sort present in this case; and as the judge below was satisfied with the verdict and overruled the motion for a new trial, based upon that ground, we coincide with him in the opinion, and affirm the judgment below.