## AMON G. DaLEE v. PRISCILLA BLACKBURN.

1. ERROR, *When Immaterial.* Where two plaintiffs, J. and P., sued D. for damages, and judgment was rendered therefor in favor of P. only, no ruling of the court which was merely too favorable to J., or which could not have affected the judgment rendered in favor of P., can be considered as material, on a petition in error instituted by D.

2. EVIDENCE; *Competency; Cross-Examination.* It is ordinarily incompetent to ask a witness on cross-examination a question concerning a conversation of his with some other person, where no part of the conversation was given on the examination in chief, and where no time or place is suggested to the witness as to when or where this supposed conversation occurred, and where the conversation would not tend to show bias or prejudice on the part of the witness.

3. CONDUCT OF TRIAL; *Order of Testimony.* A defendant, while cross-examining a witness of the plaintiff, has no right, except by consent of the parties and permission of the court, to make said witness his own, and then introduce original evidence from this witness for the purpose of proving his own side of the case.

4. OPINIONS OF WITNESS, *Incompetent.* It is not error for the court to exclude the statements of a witness when these statements are not statements of any fact or conversation, but are merely conclusions of the witness drawn from facts and conversations.

5. INSTRUCTIONS—*Reviewing.* Where the record does not purport to contain all the instructions of the court given to the jury, the supreme court cannot consider those refused.

6. CONTRACT—*False Statements—Fraud, Deceit, etc.; Action at Law.* Where one person sells and transfers personal property to another by a written instrument, and no warranty is made by the vendor with regard to the

said property, but pending the negotiations the vendor makes statements respecting the property which are not true, whereby the vendee is induced to purchase the property which is of but little value, and where the contract of sale is allowed to remain in full force, and each party retains all he has received under or by virtue of the contract, the vendor is liable to the vendee in an action at law for damages only where the statements were made fraudulently, and is not liable where the statements were made innocently, honestly, and in good faith.

7. MOTION FOR NEW TRIAL; *Hearing; Practice.* Where a motion for a new trial has been made by the defendant upon the ground (among others) alleged as follows, "For error of law occurring at the trial and excepted to by the defendant," all rulings of the court made during the trial, and excepted to by the defendant at the time they were made, should be again considered by the court.

## *Error from Douglas District Court.*

THIS action was commenced in the district court by *Priscilla Blackburn* and John Blackburn against the plaintiff in error. The petition averred that in April 1870, the "Lawrence Roller-Plow Company" was doing business at the city of Lawrence, and claimed to be the exclusive owners of a patented plow, known as the Johnson Patent Roller-Plow, and claimed the patent extended over the whole of the United States; that said company was engaged in the manufacture and sale of the Johnson Patent Roller-Plow, and of the sale of the right to manufacture and sell said plows in states, territories, and districts within the United States; that said firm was composed of four individuals, to-wit, *Amon G. DaLee,* the defendant, and William S. DaLee, Ross Johnson, and Charles A. Wright, who were equal copartners therein; that in the months of April, May and June, 1870, the defendant, with intent to defraud the plaintiffs, made to them certain false and fraudulent representations, (set out in full in the petition;) that plaintiffs were ignorant of the facts, and relied on such representations, and believed them to be true, and so relying purchased DaLee's interest in said company and patent, and paid therefor $2,500, $800 of which was paid in cash, and the balance in a note for $200, and a note secured by mortgage on real estate for $1,500; that the real estate so mort-

gaged belonged to plaintiff *Priscilla Blackburn*, and that because of this fact, the assignment of defendant's said interest in said company and patent was made to her; that said representations were untrue, and known to be so by defendant when he made them; that he made them with a fraudulent intent; that said patent was worthless; that plaintiffs received no consideration for the money and property paid by them to defendant; that they have, ever since their discovery of the falsity of defendant's representations, been willing to reconvey to him everything received from him by them, upon his repaying what he had received from them. They claimed damages in the amount of four thousand dollars. The defendant's answer to this petition was a general denial. The cause was tried at the February Term 1872 of the district court. H. C. Schell was examined as a witness on the part of *DaLee*, and was asked this question: "State what occurred between yourself and Mr. Blackburn, the plaintiff, with reference to his purchasing an interest in the 'Lawrence Roller-Plow Company,' of Lawrence, if anything did occur." A part of Schell's answer to this question is as follows:

"Mr. Blackburn then called at my office to consult with me upon the propriety of entering into said business and purchasing said interest. At his request I made inquiry concerning the character and prospects of said business as then carried on by said Company, the result of which prompted me to advise him favorably, and I did so. [At his request we arranged a time and called upon the parties comprising said Company. I then introduced him to several members.] The subject-matter of the business was then fully discussed."

All of the above answer was stricken out except that enclosed in brackets. The proceedings, instructions and findings, so far as they are material are sufficiently stated in the opinion. Verdict in favor of *Priscilla Blackburn* for $1,500, and judgment on the verdict. New trial refused. *DaLee* brings the case here for review, and unites both the plaintiffs below in his petition as defendants in error.

*Riggs, Nevison & Simpson*, for plaintiff in error:

1. The petition filed in the court below alleges "that the plaintiff Blackburn relied wholly and implicitly upon Da-Lee's representation, and believed them each and all to be true, and that so relying upon such representations the plaintiffs purchased," etc. Now, the answer of the witness Schell, stricken out by the court, tended to show that the Blackburns did not rely upon DaLee's statements, but made an independent investigation, and employed others to assist them. This answer should certainly have gone to the jury. In the special findings of the jury, it is found that the Blackburns made the purchase on the strength of DaLee's representations. The above answer is directly opposed to this finding, and if admitted might have modified the findings and judgment of the jury. It was relevant because it tended to show that the Blackburns depended upon investigations and statements independent of DaLee's. If the jury had believed that the Blackburns, in making their purchase, depended upon the statements of others than DaLee, they could not have stultified themselves by rendering the verdict they did.

2. The court erred in instructing the jury as asked by plaintiffs, "That it makes no difference whether DaLee knew these representations to be false or not; it is sufficient that they were false"—and in kindred instructions. And erred also in refusing to give the second instruction asked by defendant, to-wit:

"2d.—If the jury shall find from the evidence that the defendant stated to the plaintiffs at and before the time of such sale and transfer, that such patent-right was very valuable, and shall find further that at such time the said patent-right was without value, yet, unless they shall further find that the defendant at the time of making such statements knew them to be false, and that said patent-right was valueless, there was no deception or fraud on the part of the defendant."

This instruction ought to have been given. "The rule has always been, that an action of deceit, in a bargain or trade,

is maintainable only where the deception complained of has been intentional on the part of the seller." 4 Blackf., 354; 2 Greenl. Ev., § 230; Kerr on Frauds, 325; 57 Barb., 414; 16 Penn. St., 200; 22 Iowa, 40; Broom's Leg. Max., 763; 41 N. H., 102.

3. The jury in their special findings say that DaLee did not make any statements that he knew to be untrue; that no statements made by DaLee in the negotiation were made fraudulently, and with the intent to defraud the Blackburns, or either of them. These findings clearly disprove all the allegations of fraud in the plaintiffs' petition, and those allegations not being sustained, the judgment should have been rendered for the defendant.

*Caldwell & Hoysradt*, for defendants in error:

1. The special findings of fact show these facts found in *Blackburn's* favor: That before DaLee made the sale he represented to Blackburn that the invention (the Johnson Patent Roller-Plow,) was of great value, and was the best plow manufactured, and would soon, by reason of its superiority, supersede all other plows, was operated with thirty-three per cent. less power than other plows, and that a team of two horses would with it perform the same work that three horses would with the ordinary plows in use in the country; that he, DaLee, had made and witnessed experiments in which said roller-plow had been frequently and thoroughly tested, and that his representations as to the practical utility of the same were predicated upon such experiments; that he frequently heard by letters from two partners who were absent for the purpose of selling the patent-right to others, and that the news from them, by such letters, was encouraging, and that they had sold to certain parties in Dixon, Illinois, the right to manufacture and vend said patent plow in the states of Iowa, Nebraska, Minnesota and Dakota, for the sum of eight thousand dollars; that he desired to sell his interest in the company for no other reason except to retire from active business, and spend his time in ease. And the jury find that

these and other representations made by DaLee were false. The findings of the jury in *DaLee's* favor are as follows: That DaLee's false statements to the Blackburns were not made by him with a knowledge of their falsity; that his representation to the Blackburns, as to the amount of the assets of the plow company being eight hundred dollars, was true; that he made no statement with intention to defraud; that Blackburn witnessed a trial of the patent plow before he purchased; that the Johnson patent roller-plow was not wholly worthless; and that John Blackburn did, before he purchased the plow, have an opportunity to examine the roller, and did make inquiries concerning its value and utility, from persons not members of the plow company.

The jury further found that the actual damage sustained by Priscilla Blackburn, by the failure of the consideration for the purchase of the plow, was fifteen hundred dollars. And they found a general verdict for the plaintiff as follows: "We the jury find for the plaintiff, and assess her damages at fifteen hundred dollars."

Do the facts so found constitute a cause of action in favor of the plaintiffs below? It is clear they show falsehood on DaLee's part; that, as misrepresentations, these falsehoods were material to the contract between the parties; that they were intended to operate upon, and influence, the plaintiffs in their dealings with DaLee, even though he did not intend to thereby deceive and defraud them; that the falsehoods constituted an inducement and motive in and did actually mislead plaintiffs to deal with DaLee; and that they were so misled to their injury or damage. Now, the only difference between this state of facts, and one fully constituting moral, actual and positive fraud, is the fact that DaLee did not intend to circumvent, cheat or deceive the plaintiffs by his misrepresentations. Is this intention a necessary element or ingredient of a cause of action at law, for damages, where all other essential elements of fraud, concur? We say not. The doctrine has undergone fluctuations, but the great weight of authority, we claim, is with us. See 9 Ves., 21; 10 Ves.,

470; 2 East, 92; 3 Camp., 505; 4 Bing., 66; 5 Bligh, N.S., 144; 3 Q. B., 58; 1 Bro. Ch., 546; 1 Bart., 471; 3 Story, 733; 7 Blackf., 178; 13 Pet., 26; 18 Wend., 406; 3 Leigh, 113; 4 Price, 135; 2 Story Eq., 157; 2 Kent's Com., 470; 3 Scam., 32; 16 Ala., 785; 3 Cranch, 270; 3 Mo., 477; 4 B. Mon., 601. The true doctrine seems to be, and is so stated in 1 Hilliard Torts, 16, as follows: "That actual misrepresentation avoids a sale of real property, even though made through ignorance of the seller himself; and that, if a party innocently and by mistake misrepresent a material fact, affecting the value of the property, upon which another party is ignorantly induced to act, it is as conclusive a ground for relief, more especially in equity, as a willful and false assertion." And in *Schneider v. Heath*, 3 Camp., 506, Sir James Mansfield said: "It signifies nothing whether a man represent a thing to be different from what he knows it to be, or whether he makes a representation which he does not know, at the time, to be true or false, if in point of fact it turns out to be false." So also, Best, C. J., in *Adamson v. Jarvis*, 4 Bing., 66, says: "He who affirms either what he does not know to be true, or knows to be false, to another's prejudice and his own gain, is both in morality and law, guilty of falsehood, and must answer in damages." So in *Fuller v. Willson*, 3 Q. B., 58, the court said: "That whether there was moral fraud or not, if the purchaser was actually deceived in his bargain, the law will relieve him from it; and that the question is, not what was passing in the mind of either principal or agent who effected the sale, but whether the purchaser was in fact deceived."

The representations made by DaLee concerning the patent, and the condition of the plow company, although the jury say, were not made with an intent to defraud, were still of such a character that he should have known their truth or falsity before making them. Take for instance, his statement that the patent roller-plow was operated with 33 per cent. less power than other plows, and that a team of two horses would with it perform the same work that three horses would

with an ordinary plow: here was a statement concerning a matter which could be settled and solved with mathematical certainty by the use of a dynamometer. One had been used prior to any representation complained of; and the bill of exceptions shows that in such use DaLee kept account of the draft as indicated by the instrument. The evidence of the witness Mansur is clear and uncontradicted on these points. It goes further; it shows an unmistakable plan to defraud, in the use of the instrument; it shows that the draft of the plow, as shown by the instrument, was incorrectly called; that he, Mansur, arrested the attention of DaLee by calling to him and telling him that such drafts were incorrectly called, and that so far as Mansur noticed DaLee paid no attention to his warning. Does this show an honest intent to ascertain the truth, so that statements concerning the draft of this plow should be correct? But whether he was ignorant and honest, or knowing and dishonest, it matters not; he had the means of determining with mathematical nicety, and it is clear, from every moral and legal standpoint, that before assuming to make positive and unqualified representations of the value and utility of the patent he should have made such determination, and be governed in his dealings as if unmistakably correct. His statements about the eight-thousand-dollar sale in Dixon, Ill., and concerning the liabilities of the company, the time when they would become due, and the ease with which they could be met and liquidated, are in nowise to be excepted from this rule. It was peculiarly within his province and duty, to know concerning the truth of these representations. They related to conditions of his property; and it neither unwise nor unfair, to impose upon the citizen the duty of knowing the condition of his property, before he assumes to make representations about it which may prejudice another. Ignorance of one's own affairs the law presumes to be the result of gross negligence. (Kerr on Frauds, 405, 406.) And, as a general proposition, equally applicable to all matters the condition of which it lies within the power of man to represent to the injury of his neighbor, it should

be the moral and legal duty of every man to know the truth before he is allowed to make a representation in such a way as to induce another to believe it to be, and rely upon it as, true.

2. To some of the rulings upon the admissibility of evidence the grounds of objection were not stated. In all such cases, we submit, error cannot be assigned. The record must disclose that the ground of objection was pointed out to the court below. Another part of these exceptions were saved to testimony objected to as leading. But as to all such objections, error will not lie; for the court below could, in its discretion, permit witnesses to be led.

3. There is no substantial error in the rulings of the court, that we can discover, where the grounds of objection are stated. But if there is, the defendant below waived it in his motion for a new trial by not specifying therein, as reasons for a new trial, either the improper admission or exclusion of testimony by the court. The language of the statute, "error of law occurring at the trial and excepted to by the defendant," is not sufficient to apprise either the court or the opposite party, with a reasonable certainty, of the ground upon which a new trial is asked; and is therefore too vague. 12 Ind., 675; 14 Ind., 322; 17 Ind., 442, 472; 29 Ind., 406. The defendant having made a motion for a new trial in the court below, is bound by reasons assigned therein, and cannot urge others in the supreme court. 30 Ind., 409.

4. The principles adverted to in the last point, concerning the waiver of error by the defendant below, in his motion for a new trial, are equally applicable to any alleged error in the giving or refusal of instructions to the jury by the court.

But even if there have been mistakes, omissions, irregularities or defects in the proceedings of the trial below, and yet substantial justice has been done, a new trial should not be granted. This proposition is firmly settled. 3 Gra. & Wat., 1200, 1231, 1236; 23 Vt., 554; 2 Scam., 348; 18 Conn., 311; 13 Smedes & Marsh., 532; 13 Peters, 170; 5 Ohio, 109; 4 Blackf., 369; 8 Ind., 339.

*Riggs, Nevison & Simpson,* for plaintiff in error, in reply:

1. The defendants in error have shown by a copious citation of authorities, that when one person has induced another to enter into a contract by misrepresentations of facts that are material in their character, the person so imposed upon may rescind the contract without showing that the other contracting party was guilty of willful deceit. It is not our purpose to controvert so self-evident a proposition; but it should be remembered that statements are not material if the complaining party had an opportunity to make an examination for himself. 2 Estee's Pleading, 430, and authorities there cited.

But the principle which counsel have relied upon in their argument, is not at all involved in the present case. An examination of the case fails to disclose any rescission of the contract of sale between the Blackburns and DaLee. It is true that the petition alleges that defendants in error have offered to reconvey to DaLee, but this is denied by plaintiff in error in his reply, and no evidence was given by the Blackburns to sustain that issue. Nor does the case made show that such reconveyance was tendered at the time of the trial; although such tender, had it been made, would have been ineffectual, as the case was tried as of the date when the action was commenced. Besides this, the petition in the court below shows that this is an action for damages for false and fraudulent representations. A party rescinding is not entitled to damages, but to recover his purchase-money with interest. A suit for damages is regarded as an election to waive the right to rescind. Sedg. on Dam., 296, 339.

It is too late for defendants in error to change the action into assumpsit for damages on breach of warranty. In cases where the contract is reduced to writing, the evidence of a warranty must be sought for in that writing. All prior negotiations are merged in that writing, and parol evidence is not admissible to add a warranty not included in the contract of sale. 1 Pars. on Cont., 348, 389; 9 Vt., 285; 3 Wendell,

459; 1 Wendell, 414, 503; 3 Foster & Finalson, 243; 15 C. B., 667.

Evidence having been given which was only admissible in an action grounded on willful deceit, it would be a fraud indeed to use that evidence in support of a verdict rendered in an entirely different kind of action. It thus appears that the only issue presented to the jury was — Did DaLee practice a willful deception in his dealings with the Blackburns? If so, were they damaged thereby, and how much? Upon this first issue the jury have passed. DaLee is fully acquitted of willful falsehood, and of intention to deceive. The issue of deceit having been decided against defendants in error, the other issues are superseded and must lapse, and with them, the verdict also. 2 Estee's Pl., 422, 427; 31 Ind., 226; 15 How., 56.

The defendants in error seek to avoid this result, in their argument before the court, by attacking the findings of fact made by the jury. The well-known rule, that appellate courts will not disturb a result reached by a jury on the ground that such result is against the weight of evidence, applies here in its full force. We attack some of these findings on the ground (among others) that evidence was improperly excluded which, had it been given, would have materially changed the opinion of the jury; but the defendants in error have no such complaint to make. To them is left the novel alternative of relying upon a verdict, while disputing the essential findings upon which that verdict is grounded.

2. Counsel lay great stress upon the assumed fact that substantial justice has been done by the jury. But we claim that substantial justice has not been reached. The jury were misdirected as to the law to be applied to the facts. They were informed that they must find for plaintiff in error if the Blackburns depended on DaLee's statements, and such statements were false; whereas the jury should have been cautioned that the plaintiff below could only recover by proving actual fraud, and by showing that the representations

were material in their nature. The court usurped the functions of the jury. It was for them, having been first instructed in the law, to apply it to the facts of the case, and decide - whether the Blackburns had a right to rely upon DaLee's statements.

. 3. Counsel make the point in their argument that the errors complained of by the plaintiff here cannot be considered by this court, owing to a defect in the motion for a new trial filed in the court below. The motion for a new trial . was of the form in common use in this state, and has the sanction of long-continued custom. This court will not disturb this custom, except for the gravest reason, and after a plain intimation of the intended change has been given to suitors.

The opinion of the court was delivered by

VALENTINE, J.: This was an action between Priscilla Blackburn and John Blackburn, as plaintiffs, and Amon G. DaLee as defendant. DaLee, as plaintiff in error, brings the case to this court. The judgment below was in favor of Priscilla Blackburn alone and against DaLee. No judgment was rendered in favor of John Blackburn. Hence any ruling of the court below which was merely too favorable to John Blackburn, or which could not have affected the judgment rendered between Priscilla Blackburn and DaLee cannot be considered as material on this petition in error. The errors complained of are as follows:

First: Plaintiff John Blackburn was examined as a witness on the part of the plaintiffs below, and on his cross-examination by the defendant below was asked the following question: "Did you not tell Mr. H. C. Schell that you wanted him to help you get this thing?" (meaning DaLee's . interest in the Lawrence Roller-Plow Company.) Plaintiffs objected to this question on the ground of incompetency. The objection was sustained, and defendant excepted. This ruling was correct. The question was incompetent on cross-examination, for no part of any such a conversation as this

14—11 KAS.

question would have elicited had been given on the examination in chief. It was not competent as laying the foundation for an impeachment of Blackburn's testimony, as no *time*, or *place*, was suggested when or where this supposed conversation occurred. It did not tend to show bias or prejudice, nor come under any of the other rules of cross-examination. And of course the defendant had no right *at this time*, except by consent of the parties, and permission of the court, to make Blackburn his own witness, and then introduce original evidence from this witness for the purpose of proving his own side of the case. (Code, § 275; Laws of 1872, page 329.) And if the defendant had made Blackburn his own witness, the question might then have been ruled out as *leading*. Besides, if the evidence had been admitted, how could it have affected the verdict and judgment in favor of Priscilla Blackburn, unless it had also been shown that Blackburn was the agent of Priscilla Blackburn for this particular purpose? Was this shown?

Second: That portion of the testimony of the witness Schell quoted in the brief of plaintiff in error which was excluded by the court was properly excluded because it was not the statement of any fact, nor the statement of any conversation, but was merely conclusions of the witness drawn from facts and conversations. And these conclusions were not drawn from any conversation had with Priscilla Blackburn, or from any conversation authorized by her. Blackburn may have been her agent for all purposes, but the evidence does not show it. It is true he signed her name to one of the instruments in writing for her, but was he an agent of hers further than this, or for any other purpose? It does not seem from the record that Priscilla Blackburn ever authorized John Blackburn to either trade or talk for her, but on the contrary it would seem that she did her own trading and talking, and that the defendant well knew this fact. If this evidence had been competent at the time it was offered as against either of the plaintiffs it should have then been admitted, and it would have been error to exclude it. But if it

was competent as against John Blackburn alone it must now be treated as immaterial. But as we have already stated, we think the evidence was wholly incompetent as against either of the plaintiffs. Schell was the witness of the defendant, and this was a part of the defendant's evidence in chief.

Third: The plaintiff in error complains of the refusal of the court to give a certain instruction. The record does not purport to contain all the instructions, and therefore for reasons often given by this court in other cases we cannot consider the one refused.

Fourth: The plaintiff in error also complains of the refusal of the court to grant a new trial; and here we shall examine the supposed errors in charging the jury, the supposed error in refusing to set aside the verdict and grant a new trial, and the supposed error in rendering judgment in favor of Priscilla Blackburn. The court charged the jury among other things the following:

"If the jury believe from the evidence that the Blackburns were induced to purchase A. G. DaLee's interest in the Lawrence Roller-Plow Company, by reason of the representations made by said DaLee, and if the jury believe the representations were false, they must find for the plaintiffs.

"It makes no difference whether A. G. DaLee knew these representations to be false, or not. It is sufficient that they were false.

"The Blackburns had a right to rely upon DaLee's statements as to existing facts, without making inquiry of others as to their truth."

The jury found a general verdict in words as follows: "We the jury find for the plaintiff, and assess her damages at $1,500." The jury also made special findings, among which are the following:

"Q.–Did DaLee make any statements to the Blackburns, or either of them, which were known to be untrue or false by DaLee when he made them, or at any time before the contract was concluded, or before Blackburn entered upon the active participation in the business of the company?" Ans.–"No."

"Q.–If DaLee in his negotiations with Blackburn made any statements which were untrue, were such statements made

fraudulently by DaLee, and with the intent to defraud the Blackburns, or either of them?" *Answer*, "No."

According to the evidence DaLee made substantially the same statements and no more to Priscilla Blackburn that he did to John Blackburn. The defendant DaLee moved the court for a new trial upon various grounds, but the court overruled the motion and rendered judgment in favor of Priscilla Blackburn and against DaLee for $1,500. In all this we think there was error. The charge of the court, the findings of the jury, and the judgment of the court were all based upon the erroneous theory that a party may make himself liable to an action at law for damages by innocently, and in good faith making statements which are in fact not true. Now this is not an action in the nature of a suit in equity, nor is it an action on a warranty. It is purely an action at law, as contradistinguished from a suit in equity, and it is purely an action of tort for deceit and fraud, as contradistinguished from an action on contract for breach of a warranty. Nothing of an equitable nature is claimed, or if remotely claimed in the petition below, it was wholly abandoned at the trial; and there has been no pretense, even, that DaLee ever made any warranty with regard to the property which has not been fulfilled. The record shows that the plaintiffs purchased (by a written contract) from DaLee a one-fourth interest in the Lawrence Roller-Plow Company, and paid therefor $800 cash down, and promissory notes (which have not yet been paid,) one for $200, and the other for $1,500, the last secured by a mortgage. The Lawrence Roller-Plow Company owned at the time of the purchase the patent-right for Johnson's Patent Roller-Plow, and also owned a small amount of other property worth over debts about $800. This property, including DaLee's interest in said company, was all transferred and assigned to the plaintiffs by an instrument in writing duly executed by DaLee. DaLee made some statements pending the negotiations with regard to the patent roller-plow, and the assets of the company, which were not true. But under

the charge of the court and the findings of the jury these statements must now be considered as having been innocently and honestly made, although we should think from the evidence that the jury must have exercised a considerable amount of charity toward DaLee in making findings of innocence or honesty in his favor. Soon after the sale and purchase the patent-right was found to be almost wholly worthless, and the company became insolvent. But the plaintiffs still retained their interest in the company, and in the patent-right, never offering to rescind the contract, or to return anything that they had received from DaLee. The plaintiffs then commenced this action for damages. And in the action they do not ask to have the contract of sale rescinded, nor do they offer to return anything which they received from DaLee. Neither do they ask to have the notes and mortgage (which are not yet paid) returned and cancelled, and they still retain their interest in the Lawrence Roller-Plow Company, and in Johnson's Patent Roller-Plow. They in fact affirm the contract of sale, and then claim damages under it. Under these circumstances we think this action must be governed by the rules of law which govern actions for fraud and deceit in effecting sales. Hence, if there was no deceit or fraud, no moral turpitude or obliquity on the part of DaLee in effecting the sale, the plaintiffs cannot recover. We know of no exception to this rule, and we know of no decision that has ever expressed a different doctrine. (*Chandelor v. Lopus,* 1 Smith's Leading Cases, 238, and cases cited in Hare and Wallace's notes.) We know that courts of equity in granting equitable relief go much further. Equitable relief may often be granted for purely innocent mistakes. But relief can never be granted in such cases as this, where the relief asked is of a purely legal character. Now if all the other necessary facts were shown, then, if Da-Lee committed any fraud in making said statements, he was certainly liable for the fraud. And if he made the statements, knowing or believing them to be false, for the purpose of effecting the sale, and did thereby effect the sale, he cer-

tainly committed a fraud. Or even if he made the statements as though he knew or believed them to be true, while in fact he had no knowledge or belief upon the subject, he was equally guilty of committing a fraud. And there are many other ways in which a fraud could have been committed, and in which DaLee could have made himself liable. But if he committed no fraud he is certainly not liable in this action.

With regard to the sufficiency of the motion for a new trial we would say, where a motion for a new trial has been made by the defendant upon the ground (among others) alleged as follows, "For error of law occurring at the trial and excepted to by the defendant," all rulings of the court made during the trial, and excepted to at the time they were made by the defendant, should be again considered by the court.

The judgment of the court below is reversed, and cause remanded for a new trial.

All the Justices concurring.