### E. A. HALLOWELL v. N. M. SMITH.

#### No. 43.

FRAUD—*Fatal Variance between Petition and Findings.* Where the plaintiff alleges fraud and deceit as the ground for a recovery of damages, it is error for the court to render judgment upon a finding of only a mutual mistake of facts.

MEMORANDUM.—Error from Republic district court; F. W. STURGES, judge. Action for damages by fraud and deceit brought by N. M. Smith against E. A. Hallowell and Frank Munger. Judgment against defendant Hallowell, and he brings the case here. Reversed. The opinion herein was filed January 9, 1896.

The statement of the case, as made by GILKESON, P. J., is as follows :

In March, 1887, the plaintiff in error wrote to N. M. Smith, the defendant in error, who then owned a stallion called "Duke of Glenn Lake," and proposed to trade him land for the horse, as follows :

"BELLEVILLE, KAN., March 19, 1887.

"*Dr. N. M. Smith, Washington:* DEAR SIR— In answer to your letter of late date would say, a party here has 160 acres of wild land he will trade for 'Duke,' No. —, imp., 13 miles from Belleville and 3½ miles from the B. & M. railroad station. No incumbrance. I think he would give you the land for the horse. It is not hilly or stony. The northeast quarter of 29–4–2. Would refer you to Geo. S. Simmonds, president of the First National Bank, H. O. Studley, county clerk, or B. R. Logan, all of Belleville. I think if anything is done, must be done soon. Let me hear from you again. I am not particular about any interest in the horse, but would like to see him here, as I have a number of mares to breed. Yours truly, .                    E. A. HALLOWELL."

Smith sent his agent, P. S. Erb, to Belleville to look at the land, and if it suited Erb he was to make the trade. Hallowell went to Munger, a liveryman, and hired him to take Erb to the land, giving them the numbers correctly, and also saying to them that it was east of John Berkman's farm. They went and examined the quarter adjoining Berkman's on the east, which was the northeast of 30, instead of the northeast of 29, both tracts being unimproved land. On Erb's return to Belleville, some talk was had with reference to Hallowell giving boot, which he refused to do: The trade was made; Hallowell accepted the horse and gave a deed for the land. Almost two years afterward Smith brought this suit against Hallowell and Munger, alleging that they had fraudulently and purposely shown his agent the wrong tract of land, and had deeded him a tract of land that was utterly worthless; that Hallowell had made certain false and fraudulent representations to him and to his agent, and that he and Munger conspired together, and it was understood between them that he should show his agent the wrong piece of land, and that these acts, arts and devices on the part of the defendants toward the plaintiff were resorted to for the purpose of cheating, wronging and defrauding this plaintiff out of his said stallion or value of the same; that by reason of said fraud, conspiracy and collusion the plaintiff had been damaged in the sum of $2,000; that said fraud was not discovered until some time in the summer or fall of 1887; that after the commencement of this action, and before trial, the plaintiff sold the land which he received in the trade.

Trial was had before court and jury, and a general verdict returned against both defendants for $200. Special findings were requested by both plaintiff and

defendant and were returned by the jury.    Motion
for judgment in favor of Hallowell and Munger on the
special findings was sustained as to Munger and over-
ruled as to Hallowell.    Judgment was rendered against
Hallowell for $200.    Motion for new trial was filed
and overruled, and from this judgment he appeals and
brings the case here for review.

*W. T. Dillon*, for plaintiff in error.

*J. W. Rector*, and *T. M. Noble*, for defendant in er-
ror.

The opinion of the court was delivered by

GILKESON, P. J.:  The errors complained of on the
part of the plaintiff in error are in giving certain in-
structions and the overruling of the motion for a new
trial.    The sole ground for recovery laid in the peti-
tion was the fraud and deceit of the defendant in
making the trade.    Nothing of an equitable nature
was claimed.    The case was tried on the theory of
fraud, yet the instructions of the court attempted to
and did change the nature of the case, and authorized
the jury to give the plaintiff relief upon the ground
of mutual mistake and negligence, and the jury must
have rendered their verdict upon the theory of mutual
mistake and negligence, for they found that the ex-
amination of the land was without fraud or procure-
ment on the part of any one, but was a mutual mistake ;
and they specifically found that the defendant Munger
did not intentionally, for the purpose of deceiving
Erb, show him the wrong tract of land, and that there
was no collusion or agreement between the defendants
by which it was agreed and understood that Munger
should show Erb the wrong tract of land, and that
Hallowell did not know, prior to the final consumma-

tion of the trade in question, that Erb had examined the wrong tract of land.

As we have said, the charge of the court and findings of the jury are all based upon the theory that the plaintiff could recover after there had been a mutual mistake, or if Hallowell was guilty of negligence. As far as false or fraudulent representations being made are concerned, there is a total failure of proof, as the records show that the only representation made by Hallowell was, as mentioned in his letter, that the land was neither hilly nor stony. Smith never offered to rescind the contract after he discovered what he terms the fraud, which was in the summer of 1887, nor offered to return the property which was in his possession and under his control at the time this suit was commenced, but waited until after Hallowell had disposed of the horse before bringing his suit for damages. Counsel say that he could not rescind and return the property at the time the suit was brought, as Hallowell did not have the horse in his possession or under his control. This is true ; but there was ample time for him to have done so between the date of the discovery of the fraud and the sale of the horse ; "and where grounds for rescission of a contract exist, a party desiring to avail himself of them must act with reasonable promptness in returning the property." This Smith did not do, and very potent reasons are discoverable by an examination of the record why he did not want the property returned to him. Of course, it is his right to make an election, but when he has made it, he must be bound by it. Under the circumstances, we think this action must be governed by the rules of law which govern actions for fraud and deceit in effecting sales. Hence, if there was no fraud or deceit, no moral turpitude or obliquity on the part of

Hallowell in effecting the sale, the plaintiff cannot recover. We know of no exception to this rule, and we know of no decision that has ever expressed a different doctrine. ( *Chandler v. Lopus*, 1 Smith's Lead. Cas. 238, and cases cited in Hare and Wallace's notes; *DaLee v. Blackburn*, 11 Kan. 190.) We know that courts of equity, in granting equitable relief, go much further. "Equitable relief may often be granted for purely innocent mistakes, but relief can never be granted in such cases as this where the relief asked is of a purely legal character." ( *DaLee v. Blackburn*, supra.)

Now if all the other necessary facts were shown, then, if Hallowell committed any fraud in making such statements as he did make, he certainly was liable for the fraud ; and if he made the statements knowing and believing them to be false, for the purpose of effecting the sale, and did thereby effect the sale, he certainly did commit fraud ; or, even if he made the statements as though he knew or believed them to be true, while in fact he had no knowledge or belief on the subject, he was equally guilty of committing fraud ; and there are many other ways in which fraud could have been committed, and in which Hallowell could have made himself liable. But if he committed no fraud he is certainly not liable in this action.

The code provides :

"Sec. 133. No variance between the allegations in a pleading and the proof is to be deemed material unless it have actually misled the adverse party, to his prejudice, in maintaining his action or defense upon the merits. . . .

"Sec. 134. When the variance is not material, as provided in the last section, the court may direct the fact to be found, according to the evidence, and may order an immediate amendment without cost.

"Sec. 135. When, however, the allegation of the claim or defense, to which the proof is directed, is unproved, not in some particular or particulars only, but in its general scope and meaning, it is not to be deemed a case of variance within the last two sections, but a failure of proof."

The code here described three grades of disagreement between the proof at the trial and the allegations in the pleading to which such proofs are directed : (1) An immaterial variance, and in such case the courts will order an immediate amendment. (2) An immaterial variance where the proof has some relation to and connects with the allegations, yet the difference is so substantial that the adverse party is misled ; then upon a proper showing the court will permit an amendment. (3) Complete failure of proof ; that is, where the proofs did not materially fail to conform with the allegations in some particular or particulars, but in its entire scope and meaniug. In other words, where the proofs establish something wholly different from the allegations of the pleadings. In such a case no amendment can be permitted, but the action should be dismissed. As we have said, the sole ground for recovery laid in the petition was the fraud and deceit of Hallowell in making the trade. In other words, the allegations in the petition, in its general scope and meaning, are, that the defendant Hallowell was guilty of actual fraud and conspiracy against the plaintiff, whereby he was injured, while the proof directed to those allegations and the special findings of the jury are, that he was not guilty of fraud or conspiracy, but at most was negligent, and that the injury, if any happened, was caused by his negligence or the mutual negligence and mistake of the parties to the transaction. This is not an immaterial variance,

under sections 133 and 134, but a total failure of proof, under section 135 of the code.

The judgment in this case is reversed, and cause remanded with instructions to render judgment therein for Hallowell upon the special findings.

All the Judges concurring.