THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY v. JOHN STIBBS.

(Filed September 5, 1906.)

1. **EVIDENCE—Conclusions of Witness.** It is not error for the court to strike from a deposition, or exclude from the testimony of a witness, any statement or answer which is merely a supposed inference or conclusion of the witness drawn from a given state of facts.

2. **CARRIERS—Degree of Care Required.** A common carrier of persons for hire or reward must use the utmost care and diligence for their safe carriage, and must provide everything for that purpose, and must exercise to that end a reasonable degree of skill.

3. **TORTS—Damages—Personal Injuries.** In an action for personal injuries which prevent the plaintiff from pursuing his usual occupation, his loss of earnings is a proper element of damages, and evidence of his average monthly earnings is admissible.

4. **SAME—Same—Instructions.** The instructions in this case with reference to the measure of damages do not assume the existence and proof of disputed facts, and thereby invade the province of the jury in determining the measure of damages, but fairly and correctly state the law.

(Syllabus by the Court.)

*Error from the District Court of Grant County; before James K. Beauchamp; Trial Judge.*

M. A. Low, Paul E. Walker, Blake, Blake & Low, and J. C. Roberts, for plaintiff in error.

P. C. Simons and A. M. Mackey, for defendant in error.

### STATEMENT OF FACTS.

This was an action for personal injuries brought in the district court of Grant county, by John Stibbs, defendant in error, against The Chicago, Rock Island & Pacific Railway Company, plaintiff in error. The facts, briefly stated, are that the plaintiff was a lawful passenger on the defendant's train, having purchased at Kansas City a ticket to Medford, Oklahoma. That about the hour of three o'clock on the morning of March 14, 1903, at a point near Dwight, Kansas, the train collided with the eastbound train known as the Golden Gate Limited. The plaintiff at the time was asleep in one of the coaches of the westbound train, and was thrown from the seat in which he was reclining at the time, against the furniture or seat of the car, whereby he claims he sustained serious injuries to his head and back, and that said injuries were occasioned by reason of the negligence of the defendant company. The defense was a general denial, and contributory negligence. There was little, if any, conflict in the evidence, except on the issue of the injuries that were sustained by the plaintiff. The injuries sustained by the plaintiff were the principal ground of contention. The plaintiff claimed that he received serious injuries to his head and spine, on account of which he was wholly incapacitated to pursue his usual vocation. On the other hand, the railway

company contended that the plaintiff received but slight injuries, if any, and that the injuries the plaintiff claimed to have sustained to his spine were merely feigned and a sham. A great deal of evidence was introduced on both sides, and the jury returned a verdict for the plaintiff, and assessed his damages at $6500.00. At the request of the defendant, special findings of fact were submitted, which were answered by the jury, and returned with their general verdict. These answers are in harmony with the general verdict. Judgment having been entered by the court in accordance with the verdict, a motion for new trial was filed, and was considered and overruled by the court, and exception was saved, and the defendant brings the case here for review.

Opinion of the court by

HAINER, J. : The first error assigned and argued is that the court erred in striking out certain portions of the affidavit of Paul E. Walker for continuance, and which was treated as the deposition of the absent witness, Bert Streets, under the provisions of section 329 of our code of civil procedure, page 816, Statutes of 1893. The portions stricken out were merely the opinion or conclusion of the witness, and not a statement of fact. It is not error for the court to strike from a deposition, or exclude from the evidence of a witness, any statement or answer which is merely an inference or conclusion of the witness drawn from a given state of facts.

In *DaLee v. Blackburn,* 11 Kan. 190, the rule is thus stated :

"It is not error for the court to exclude statements of a witness when the statements are not statements of fact or conversation, but merely conclusions of the witness drawn from facts and conversations."

In *Shepard v. Pratt*, 16 Kan. 209, it is said:

"A witness should state the facts and not his conclusions from the facts. So where in a deposition a witness after testifying that he heard a conversation between certain parties proceeds as follows: 'From such conversation I learned,' and then gives not his recollection of what the parties stated, but what he understood was the result of the conversation: *Held*: There was no error in ruling out that portion of the deposition."

Plaintiff in error contends that the court erred in giving instruction 5, which is as follows:

"You are instructed that under the law of this territory, a carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill."

It is sufficient answer to this contention to say that his instruction was in the language of our statute, which provides the degree of care which a common carrier for hire must exercise.

Section 440, page 145, of the Statutes of 1893, provides as follows:

"A carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill."

But it is contended by the learned counsel for plaintiff in error that this provision of our statute is not applicable, since the collision of the defendant's trains occurred in Kansas, and the carriage of the plaintiff was in the nature of interstate commerce, and was not under state control. This contention is not well taken. Independently of any statu-

tory provision the instruction correctly states the law, upon principle as well as sound public policy.

In *Philadelphia and Reading Railroad Company v. Derby,* 14 How. 467-485, the supreme court of the United States, in discussing this proposition, uses the following language:

"When carriers undertake to convey persons by the powerful and dangerous agency of steam, public policy and safety require that they be held to the greatest possible care and diligence. And whether the consideration for such transportation be pecuniary or otherwise, the personal safety of the passengers should not be left to the sport of chance or the negligence of careless agents. Any negligence, in such cases, may well deserve the epithet of 'gross.'"

In this case the supreme court of the United States had under consideration a free passenger, a stockholder of the company, taken over the road by the president to examine its condition, and it was contended in the argument that as to him nothing but gross negligence would make the company liable.

In the subsequent case of *Steamboat New World v. King,* 16 How, 469, which was also a case of a free passenger carried on a steamboat, and injured by the explosion of a boiler, Curtis, J, quoting the above paragraph said:

"We desire to be understood to reaffirm that doctrine, as resting, not only on public policy, but on sound principles of law."

In *Indianapolis and St. Louis Railroad Company v. Horst,* 93 U. S. 291, the supreme court of the United States held that in an action against a railroad company for injuries received by a passenger upon its road, it is not error for the

court to instruct the jury, "that a person taking a cattle-train is entitled to demand the highest possible degree of care and diligence, regardless of the kind of train he takes." Mr. Justice Swayne, in the course of the opinion, on page 296, after reviewing the above authorities, uses the following language:

"But, upon principle, why should not the law be so in this case? Life and limb are as valuable, and there is the same right to safety, in the caboose as in the palace-car. The same formidable power gives the traction in both cases. The rule is uniformly applied to passenger-trains. The same considerations apply to freight-trains: the same dangers are common to both. Such care and diligence are as effectual and as important upon the latter as upon the former, and not more difficult to exercise. There is no reason, in the nature of things, why the passenger should not be as safe upon one as the other. With proper vigilance on the part of the carrier, he is so. The passenger has no authority upon either, except as to the personal care of himself. The conductor is the animating and controlling spirit of the mechanism employed. The public have no choice but to use it. The standard of duty should be according to the consequences that may ensue from carelessness. The rule of law has its foundation deep in public policy. It is approved by experience, but sanctioned by the plainest principles of reason and justice. It is of great importance that courts of justice should not relax it. The terms in question do not mean all the care and diligence the human mind can conceive of, nor such as will render the transportation free from any possible peril, not such as would drive the carrier from his business. It does not, for instance, require, with respect to either passenger or freight trains, steel rails and iron or granite crossties, because such ties are less liable to decay, and hence safer than those of wood; nor upon freight-trains air-brakes, bell-pulls, and a brakeman upon every car; but it does emphat-

ically require everything necessary to the security of the passenger upon either, and reasonably consistent with the business of the carrier, and the means of conveyance employed. The language used cannot mislead. It well expresses the rigorous requirement of the law, and ought not to be departed from. The rule is beneficial to both parties. It tends to give protection to the traveller, and warns the carrier against the consequences of delinquency. A lower degree of vigilance than that required would have averted the catastrophe from which the litigation has arisen. *Dunn v. Grand Trunk R. R. Co.,* 58 Me. 157; *Tuller v. Talbot,* 23 Ill. 357; *Pittsburg & C. R. R. Co. v. Thompson,* 56 Ill. 138."

If the principle announced by these well-considered cases applies to a free passenger on a stock train, it must follow, as an irresistable conclusion, that it applies with much greater force to a passenger train and to a passenger who pays his fare, and who is free from any fault or negligence, as in the case under consideration. On the other hand, the evidence shows that the collision in this case between the defendant's passenger trains was wholly due to the negligence of its servants and employes. It follows that there was no error in giving this instruction to the jury.

The next error complained of is that the court erred in its charge to the jury in reference to the measure of damages recoverable in this case. Instruction 6, which was given at the request of the plaintiff, is as follows:

"If you find from the evidence under the rules laid down in these instructions that the plaintiff is entitled to recover damages from the defendant, then you are instructed that in estimating the damages which you will award the plaintiff you are entitled to take into consideration the extent of plaintiff's injuries, if any were suffered by him, the physicial and

mental pain and suffering which he has endured, and which were the natural and proximate result of such injuries and also that pain and suffering which is reasonably certain that he will suffer in the future as the natural and proximate result of such injuries.

"You may also consider his loss of capacity, physical and mental, to attend to his usual business or perform the kind of labor for which he is fitted.

"You may also consider his loss of time from his business or occupation and that which is reasonably certain to result in the future as the natural, direct and proximate result of his injuries. You may also take into consideration the necessary medical and other expenses incurred by him in endeavoring to effect a cure or alleviate his condition.

"To recover for such expenses the plaintiff must show either that he had paid for such services or become liable to pay for the same. He may also recover for such future expenses for medical and other expenses as it is reasonably certain that he will be compelled to incur for such treatment and care as are regarded necessary and imperative in his behalf as the direct and proximate result of the injuries from which he is suffering."

It is earnestly contended by counsel for plaintiff in error that this instruction is erroneous, and the ground for reversal of the cause, for the reason that in stating the elements of damages the court assumed the existence of injuries which were not warranted by the evidence. The general doctrine is well settled that a charge which in effect assumes the existence and proof of disputed facts, or which restricts or interferes with the discretion of the jury is erroneous, and if it is of such a character as to mislead the jury, it is ground for reversal of the cause. But, after a careful analysis of the instruction, we do not think that it

is subject to these objections. On the contrary, we think when the instruction is carefully considered, it fairly and correctly states the various elements of damages recoverable, if the jury find the issues in favor of the plaintiff. It will be observed that the instruction states at the very outset, "if you find from the evidence under the rules laid down in these instructions that the plaintiff is entitled to recover damages from the defendant, then you are instructed that in estimating the damages which you will award the plaintiff you are entitled to take into consideration the extent of plaintiff's injuries, *if any were suffered by him.*" (The italics are ours.) Then follows a statement of the different elements of damages that are recoverable in an action of this kind. And it seems to us that it was not necessary to repeat the phrases "if you find from the evidence," and, "if any were suffered by him," in stating the subsequent elements of damages referred to in the same instruction; and that these various elements necessarily related back to, and were qualified by, the first part of the instruction, which stated under what circumstances the plaintiff could recover.

Nor do we think instruction 7, in reference to the measure of damages recoverable for physical and mental pain and suffering, is subject to serious objection or criticism. While some of the language used in the instruction was perhaps not as felicitious as it should have been, yet we are of the opinion that the instruction did not confuse or mislead the jury, and that this instruction, when considered with the other instructions in reference to the measure of damages, fairly stated the law, and that the charge, as a whole, is in accord with the adjudicated cases.

In *Railroad Company v. Barron,* 72 U. S., 105, Mr. Justice Nelson, speaking for the court,. said:

"The damages in these cases, whether the suit is in the name of the injured party, or, in case of his death, under the statute, by the legal representative, must depend very much on the good sense and sound judgment of the jury upon all the facts and circumstances of the particular case. If the suit is brought by the party, there can be no fixed measure of compensation for the pain and anguish of body and mind, nor for the loss of time and care in business, or the permanent injury to health and body."

In the case of *The City of Panama,* 101 U. S., 453, this doctrine was reiterated and approved by the court.

In *Vicksburg, &c., Railroad Co., v. Putman,* 118 U. S. 554, Mr. Justice Gray, speaking for the court says:

"In an action for a personal injury, the plaintiff is entitled to recover compensation, so far as it is susceptible of an estimate in money, for the loss and damage caused to him by the defendant's negligence, including not only expenses incurred for medical attendance, and a reasonable sum for his pain and suffering, but also a fair recompense for the loss of what he could otherwise have earned in his trade or profession, and has been deprived of the capacity of earning, by the wrongful act of the defendant. *Wade v. Leroy,* 20 How. 34; *Nebraska City v. Campbell,* 2 Black, 590; *Ballou v. Farnum,* 11 Allen, 73; *New Jersey Express Co. v. Nichols,* 3 Vroom, 166, and 4 Vroom 430; *Phillips v. London & Southwestern Railway,* 4 Q. B. D. 406, 5 Q. B. D. 78, and 5 C. P. D. 280, S. C. 49, Law Journal (Q. B.) 233."

In *Davidson v. Southern Pac. Co.,* 44 Fed. 481, the following charge was approved:

"In reference to the question of damages, you are instructed that that law furnishes no fixed or defined standard for the guidance of the jury in awarding compensation in

cases of this kind for the injuries sustained by the injured party, and the amount of damages to be awarded must be left, in view of the testimony, to the sense of right and justice of the jury. The plaintiff, if your finding be in his favor, should be fairly and justly compensated for the injuries he has sustained. In making your estimate of such damages, you are authorized to consider (1) such special expenses as may be shown by the testimony to have been incurred by the plaintiff by reason of his injuries during the period of his disability, while confined; (2) the value of the time lost by him during the period in which he was disabled, from his injuries, to work and labor, taking into consideration the nature of his business, and the value of his services in conducting the same; (3) fair compensation for the mental and physical suffering caused by the injury; and (4) the probable effect of the injury in future upon his health, and the use of his injured hand, and his ability to labor and attend to his affairs, and, generally, any reduction of his power and capacity to labor and earn money, and pursue the course of life, which he might otherwise have done."

Measured by the rule laid down in these authorities, we are of the opinion that there was no material error in the charge to the jury which would justify a reversal of the cause.

It is next contended that the court erred in admitting the testimony of the plaintiff in regard to the damages that were recoverable for loss of time. It seems that after the plaintiff had testified that his occupation was that of a farmer, a stock-raiser, and a well-driller, he was permitted to state what his earning capacity was reasonably worth per month prior to the time he sustained the injuries which were the subject of this controversy. To this ruling the defendant excepted. We are of the opinion that the evidence was admissible, and hence that there was no error in this ruling.

In *Murdock v. New York & B. Dispatch Ex. Co.,* 46 N. E. 57, the supreme judicial court of Massachussetts held that:

"In an action for personal injuries which prevented plaintiff from working, his loss of earnings is a proper element of damages, and evidence of his average monthly earnings is admissible."

In *Braithwaite v. Hall,* 168 Mass. 39, 46 N. E. 398, this rule is clearly stated by Mr. Justice Holmes, then associate justice of the supreme judicial court of Massachusetts, and now one of the justices of the supreme court of the United States, as follows:

"The ruling as to damages was correct. It is true that, when a man is allowed to prove his average earnings or the wages actually lost by him, they are proved as a measure of the value of the time and power to labor of which he has been deprived, not as themselves recoverable *eo nomine* But the distinction does not appear to be material in this case. There is nothing to show that the wages were not reasonable, and a proper measure of the value of the plaintiff's time. It is argued for the defendant that the true measure is the market value of the averages of a man of the plaintiff's average capacity, working in the same employment. But the cases cited do not sustain the position, and there are many decisions adopting the test of the individual's experience. If any distinctions in the value of men's time are admitted, there is not reason why the whole actual difference should not be recognized."

In *Wade v. Leroy,* 61 U. S. 34, it was held that:

"In an action against the owners of a ferry boat, for personal injuries sustained by the negligence of its officers, it was held that the plaintiff might show that he was engaged in a particular business, and had been incapacitated from attending to it as exhibiting the extent of the injury, and

that it had occasioned expense, suffering and loss of time which had value to him, although the nature of his occupation was not set forth in the declaration."

And in *Nebraska City v. Campbell*, 67 U. S., 590, it was held that, in an action for damages sustained by the negligence of a municipal corporation, evidence showing the business in which the plaintiff was engaged, its extent and the consequent loss arising to him from his inability to prosecute it, is relevant and pertinent, as enabling the jury to fix, with some certainty, the direct and necessary damages resulting from his injuries.

So, in the case under consideration, we think it was proper for the plaintiff to state that his time, prior to the accident, was reasonably worth from a hundred to a hundred and fifty dollars a month. And in the light of all the evidence, we are of the opinion that the amount allowed for loss of time and diminution of earning capacity was not excessive.

Upon a careful examination and consideration of the entire record, we are of the opinion that no error was committed which would require a reversal of this cause, and believing that the verdict of the jury is fully sustained by the evidence, and that the judgment of the court is in consonance with right and justice, the cause is hereby affirmed.

All the Justices concurring.