## THE PACIFIC RAILROAD CO. v. R. H. BROWN.

1. INSTRUCTIONS; *Not Preserved in the Record.* This court has repeatedly held, and again decides, that, where the record fails to show that all the instructions which were given are preserved, we cannot say there was error in refusing any, because those refused may have been so refused because already once given.

2. CONTRIBUTORY NEGLIGENCE; *When it will not Prevent a Recovery.* In an action for damages for killing stock on a railroad track, where it appears that the stock was killed through the negligence of the trainmen on a passing train—that the stock was running at large, and strayed on the track—that the night preceding the injury it had been shut up in the plaintiff's barn, but without his knowledge had gotten out of the barn into the barn-lot, and thence through a gate into the road, and thus strayed away to the place of injury, *held*, that the fact that plaintiff had another horse which was in the habit of opening the gate of the barn-lot, and did in fact open the gate at that time, did not amount to such contributory negligence as to defeat the plaintiff's recovery.

*Error from Wyandotte District Court.*

ACTION by *Brown* to recover damages for the alleged killing of two horses by the *Railroad Company*, "by so carelessly and negligently running and managing its loco-

motive and cars that the same ran against and over said horses," etc. Answer, general denial, and negligence on the part of plaintiff. Trial at the October Term 1873. Verdict and judgment in favor of plaintiff for $368, and the *Railroad Company* brings the case here on error. The instructions refused, are quoted in the opinion.

*Bartlett & Hale,* for plaintiff in error:

1. The court erred in refusing to give the 5th instruction asked for by plaintiff in error. The act of 1870, ch. 33, (*St. Jos. & D. C. Railroad Co. v. Grover,* 11 Kas., 302,) has not changed the rule of law as to the negligence of the owner of stock in allowing them to roam at large in the vicinity of an unfenced railroad. The statute and the rule adopted in the cited case only affect the question of negligence and the relative rights of the parties. It is still gross negligence on the part of the owner of stock to allow them to run at large in the immediate vicinity of a railroad in this state, and which the owners thereof are not bound to fence; and hence the ruling of this court in the *U. P. Railroad Co. v. Rollins,* 5 Kas., 167, is of binding force except in relation to the relative rights of the parties on the question of negligence. Previous to the act of 1870 the defendant in cases like this was only liable for *gross* negligence; now, however, it is held liable for ordinary negligence. Still, if there is negligence on the part of the plaintiff which contributed to the injury, there can be no recovery. 42 Vt., 375; 19 Penn. St., 298; 29 Maine, 397; 6 Am. Law Reg., 342.

2. The court refused to give to the jury the 6th instruction asked. The plaintiff in error had the undoubted right to submit this question of contributory negligence to the jury. The act of 1870 gives no authority to the owner of horses and cattle to allow them to run at large and trespass with impunity on the lands and possessions of others. It was important that the jury should be instructed as to the law on this point. The answer of plaintiff in error set up contributory negligence on the part of Brown by suffering his horses

to run at large in the immediate vicinity of the railroad. The court in refusing to give the instruction virtually gave to the jury the converse of the proposition, viz., that the defendant in error had the right to allow his horses at the time of the accident, to run at large in the immediate vicinity of the railroad, and the jury undoubtedly drew this conclusion: Shearman & Redf. on Negligence, § 363; 35 Maine, 422; 14 Barb., 364; 6 Ind., 141. And by refusing the 7th instruction, the court gave the jury to understand that it was a part of the law of the case that it was a duty of the employes on moving trains to watch for horses and cattle trespassing on the railroad of plaintiff in error. Or, in other words, it is the duty of the employes to divide their time between the operation of the cars, and the cattle or horses of negligent owners trespassing on the track of the railroad. The servants of the plaintiff in error on the train were not employed to watch trespassing cattle and horses, but to devote their whole time and attention to the train, passengers and property of plaintiff in error.

3. Plaintiff in error asked the court to instruct the jury that "It is a presumption of law that the employes of moving trains do their duty in all respects as well as to those on their own train and the property of the company as those off the train and their property." This instruction was refused, thereby giving the jury to understand the converse of the instruction asked for was the presumption of law, viz., that the presumption of law is, that the employes on moving trains *do not do their duty* in all respects, as well to those on the train and the property of the company as those off the train and their property—thus reversing the whole course of authority: 39 How. Prac. Rep., 420; 3 East, 192; 40 N. Y., 34; 12 Wheaton, 70; 19 Johns., 345.

4. The jury found that Brown had a horse "that was in the habit of opening the gate at his lot, and that this horse opened the gate and let the horses in question out of the lot after they got out of the barn." Defendant in error is as much responsible for the acts of his vicious horse, of which

he has previous knowledge, as for those of his servants. The accident would not have happened but for the singular propensity of the horse in question, and as defendant in error was well aware of this he must be held responsible for all the results flowing directly therefrom. He contributed to the accident, and hence the verdict should have been set aside, and a new trial granted.

*Scroggs & Bartlett*, for defendant in error:

1. Every legal proposition contained in the 5th instruction asked by plaintiff in error, and refused, is contained in said plaintiff's 4th instruction, which was given; and when the court has once given the law upon a point, it is not necessary to repeat it when asked. 8 Kas., 159, 180, 213.

2. There was no error in refusing to give the special instructions asked by the defendant below. Said instruction embodies a question of fact controverted by both the pleadings and the evidence, as to whether defendant in error *did allow* his horses to stray upon the track of plaintiff in error, or whether they got there through the negligence of his servants. The testimony all shows that the horses did not get upon the track by any permission of Brown, nor by any negligence of his servants. And it appears from the evidence that the giving of the instructions refused could not have affected the verdict. The refusal to give such instructions is no ground of error: 3 Mich., 55, 70; 14 Mich., 392; 19 Mich., 239.

The opinion of the court was delivered by

BREWER, J.: This was an action to recover damages for the killing of a span of horses. The errors assigned are in refusing certain instructions asked by the plaintiff in error, and in overruling a motion for a new trial. So far as the first of these errors is concerned, it would be sufficient to say, that the record fails to give the charge of the court, or the instructions (if any) given at the instance of the defendant in error, or to show that the instructions preserved were the only ones given. It may be that the instructions refused were so re-

fused because already once given. *Wilson v. Fuller*, 9 Kas., 176; *DaLee v. Blackburn*, 11 Kas., 190; *Furguson v. Graves*, 12 Kas., 39.

We think the rulings of the court in this matter would however have to be upheld upon other grounds. It seems to us that the instructions refused were incorrect, or inapplicable, or in substance already sufficiently given. Thus, the sixth instruction, viz., "That it is carelessness on the part of the owner of horses and cattle to allow them to roam at large in the vicinity of an unfenced railroad," was clearly inapplicable. The only testimony in the case showed that Brown was not in the habit of letting his horses run at large, and that on the night preceding the injury he had shut them up in his barn from whence they had gotten out into his barn-yard, and thence through the gate into the street, and wandered away. So that whatever of blame might attach to the plaintiff, it did not lie in the direction of this instruction. The seventh instruction asked for was as follows: "It is no part of the duty of those in charge of moving railroad trains to keep watch for cattle or horses that may accidentally have strayed upon the track of the railroad." Now whatever of truth there may be in this, as an abstract proposition, it would under the circumstances of this case have been apt to convey a wrong impression. The place of the accident was visible for half a mile in either direction along the track. There was testimony to show that the speed of the train was not slacked, that no warning was given by whistle, or bell, or letting off of steam. There was no testimony offered for the defense, and none for the plaintiff from which the jury could infer that any of the train-men knew of the presence of these horses on the track before the moment ôf injury. Would not a jury gather the impression from such an instruction, then, that there was no breach of duty, no negligence, on the part of the train-men even if they remained thus wholly unaware of the presence of the horses on the track until the very moment of striking them, and therefore took no measures to prevent the injury? We think therefore that the

31—14 KAS.

court properly refused the instruction. It could have subserved no proper purpose, and was liable to mislead. A similar criticism may be passed upon another instruction, asked, viz., that "It is a presumption of law that the employes of moving trains do their duty in all respects as well to those on their own train and the property of the company as to those off the train and their property."

The motion for a new trial was also properly overruled. The testimony of the plaintiff tended to show negligence on the part of the defendant, and the defendant introduced no testimony. Defendant claims that the answer of the jury to a certain question showed contributory negligence on the part of the plaintiff. That answer stated that plaintiff had a horse which was in the habit of opening the gate of his barnlot, and did on the night in question open the gate and let the team that was killed out into the road. There was no testimony tending to show where the plaintiff resided, or how near to the railroad track. We cannot think that this is such contributory negligence as to defeat the plaintiff's recovery. If negligence at all, it was both slight and remote.

Upon the whole record we see no error, and the judgment must be affirmed.

All the Justices concurring.