THE STATE OF KANSAS v. ARCHIE O'LAUGHLIN, *et al.*

1. LAND *Within Jurisdiction of State.* A tract of land included within the 200,000 acres retroceded by the treaty of November, 1854, to the Shawnee Indians, and thereafter patented to one of the tribe, and by such patentee conveyed by approved deed, is, notwithstanding the proviso to the first section of the act of admission, within the territorial limits of the state of Kansas, and wholly subject to its laws.

2. HIGHWAY, *Deemed Duly Established.* Where the question is as to the existence of a highway, and it appears that in 1865 the legislature ordered the establishment of a state road, and named the commissioners to survey and lay off such road, and from the oral testimony of one of the commissioners that they did, in fact, with one, Stuck, the county surveyor, lay off such road, and make and file with the county clerk a

report of their proceedings, and the records of the county board contain orders reciting the filing of said report, approving it, and ordering the road opened; and where there is found in the county clerk's office a survey and map of said road made by said county surveyor Stuck, which, though bearing no file-marks, is shown to have been one of the papers in said office from about the time of the survey, and to have been used and referred to as the official map and survey of said road; and where it further appears, that shortly after such survey, the travel conformed to the line established by it, and that it was worked as a public highway by the road overseer: *Held,* That upon an inquiry made twelve years thereafter, as to the validity of such highway, it will be deemed to have been satisfactorily proved, although the report of the commissioners cannot be found among the papers of the county clerk's office.

### *Appeal from Johnson District Court.*

AT the June Term, 1878, of the district court, *Archie O'Laughlin* and *Wm. Ferguson* were convicted on a charge of obstructing a public highway in Johnson county, and from such conviction they appeal. The facts are sufficiently stated in the opinion, *infra,* and in *The State v. O'Laughlin,* 19 Kas. 504.

*J. W. Green,* for appellants.

*W. A. Johnston,* attorney general, for The State.

The opinion of the court was delivered by

BREWER, J.: The defendants were prosecuted in the district court of Johnson county, on a charge of obstructing a highway in said county. In June, 1877, the defendants were convicted on this charge, and on appeal to this court such conviction was reversed, and the case remanded for a new trial. (19 Kas. 504.) At the second trial, in June, 1878, the defendants were again convicted, and from such conviction a second time appeal to this court.

The first question is as to the jurisdiction of the district court. The question was raised by plea in abatement, filed by leave of the court. Upon this question the facts are these: The quarter-section on which the offense is said to have been committed is within the reservation secured to the

Shawnee Indians by virtue of the treaty of August 8, 1831, and also a part of the 200,000 acres of said reservation retroceded to the Shawnees by the treaty of November, 1854. It was, under said treaty of 1854, patented in severalty to a member of said tribe, and thereafter conveyed by said patentee by approved deed, long before the time of the alleged offense. The contention is, that this quarter-section never became a part of the territory of Kansas; and this by virtue of the following proviso to the first section of the act of admission:

"That nothing contained in the said constitution respecting the boundary of said state shall be construed to impair the rights of person or property, now pertaining to the Indians of said territory, so long as such rights shall remain unextinguished by treaty between the United States and such Indians, or to include any territory which, by treaty with such Indian tribe, is not, without the consent of such tribe, to be included within the territorial limits or jurisdiction of any state or territory; but all such territory shall be excepted out of the boundaries, and constitute no part of the state of Kansas, until said tribe shall signify their assent to the president of the United States to be included within said state, or to affect the authority of the government of the United States to make any regulation respecting such Indians, their lands, property, or other rights, by treaty, law, or otherwise, which it would have been competent to make if this act had never passed."

The tenth article of the treaty of 1831 provided that the reservation should never be included within the bounds of any state or territory, nor subject to the laws thereof. And if this treaty had remained unchanged and with all its stipulations, and the title to this land had never passed from the Indians, doubtless this contention of defendant would have to be sustained. But the treaty of 1854 expressly ceded this entire reservation back to the government, reserving therefrom 200,000 acres for homes for the Shawnee people. This treaty also provided for an allotment in severalty of such portion of this land as individual Shawnees might select, with a right to patents, and also thereafter to dispose of such

lands by deeds approved by the secretary of the interior. It further stipulated for the payment of a large sum of money to said tribe in consideration of such cession and in satisfaction of all claims of said tribe, "and in release of all demands and stipulations arising under former treaties." In the case of *The Kansas Indians*, 5 Wall. 737, the supreme court of the United States, while deciding that lands held by the Shawnee Indians in severalty under the treaty of 1854 were not subject to taxation, failed to hold that all the stipulations of the treaty of 1831 were carried into and became a part of the treaty of 1854. The opinion of the supreme court in that case was adverse to the opinion of this court, (3 Kas. 299,) and so far as it goes concludes us. . But the present question was not involved in that case. That court did not decide that these lands were not within the territorial limits of the state of Kansas, but simply that while owned by the Indians they were not taxable. But in the case at bar the lands are no longer' Indian lands. Not only were they set apart in severalty to an Indian and patented, but by such Indian they had been properly and legally conveyed. They are not a part of any reservation; they do not belong to and are not in the possession of any Indian. The reasoning in the opinion in the case of *Miami Co. v. Brackenridge*, 12 Kas. 114, seems to be applicable. We think the lands were not excluded by said proviso from the territorial limits of the state, and there being no longer any Indian ownership or possession, the state has full and complete jurisdiction over them. The plea in abatement was properly overruled.

1. Land within jurisdiction of state.

The other errors complained of are in reference to the instructions. It is insisted that the court erred in giving the fourth and eighteenth instructions asked by the state, and in refusing the 21st asked by the defendants. The fourth instruction asked by the state was in respect to a fifteen-years user of the road as a highway. The eighteenth was as follows:

"If the jury find from the evidence that the road com-

monly called the Santa Fé road was declared by the legislature of the territory of Kansas to be a territorial road, and that it was continuously used and traveled by the public until and after the year 1864, and never was vacated by law, then I charge you that the said road became a state road by §14 of ch.110 of the laws of Kansas for the year 1864."

The twenty-first asked by defendant was in reference to the validity of what is called the "Stuck survey." Now we remark that the record does not affirmatively show the whole of the charge given by the court to the jury. It contains a certain number of instructions asked by the state, as well as certain instructions asked by the defendants, and gives the ruling of the court upon each of these instructions. It contains no general charge of the court, and does not show that one was not given. Neither does it affirmatively show that other instructions were not asked by both the state and the defendants. All that we have before us is the fact that certain instructions were asked by both the state and the defendants, and that the court gave or refused these instructions. Now in reference to such a record, this court has repeatedly ruled: First, as to instructions refused, that they may have been refused because already given in the general charge, and a refusal to repeat works no error. (*Wilson v. Fuller*, 9 Kas. 176; *Morgan v. Chapple*, 10 Kas. 217; *DaLee v. Blackburn*, 11 Kas. 190; *Ferguson v. Graves*, 12 Kas. 39; *Railroad Co. v. Brown*, 14 Kas. 469.)

*Second.* In reference to instructions given, that unless the instruction is so full and complete, that by other instructions, modifications and qualifications, the whole law applicable to the case could not have been correctly presented to the jury without a contradiction of that given, no allegation of error will be sustained. See 9 and 10 Kansas, *supra.* It has also been decided that where an error has been committed, it will not be sufficient to justify a reversal of the judgment unless it be one working injury to the substantial rights of the party complaining. (*Railroad Co. v. Pointer*, 9 Kas. 620; *Budd v. Kramer*, 14 Kas. 101.) So that whether these instructions given were correct or not, if upon the undisputed facts of the

case, the question affected by those instructions must have been decided as it was, no error will lie. Now, that the defendants closed up a road is an undisputed fact. True, it was not formally conceded, but the uncontradicted testimony establishes it beyond question. The real and only question litigated was, whether this road when it was obstructed by defendants was a legal highway. It appears from the testimony that ever since 1832 there had been a road running from Westport southwesterly through the territory of Kansas in the direction of Santa Fé, New Mexico, popularly known as "The Santa Fé trail," or "Santa Fé road." The general course and direction of this road were unchanged during all these years, and yet as the territory was open and unfenced, the traveled track moved backward and forward, varying in location sometimes as much as three miles. The first territorial legislature passed an act declaring this Santa Fé road a territorial road. (Private Laws 1855, ch. 118.) The act described the road as the Santa Fé road, and located it further, by certain points named along its line. It also provided that it should be the duty of the county courts of the different counties through which it passed to keep said road in repair at not less than 100 feet in width, and that it should be regulated and kept in repair as other territorial roads were kept. In 1864 the legislature of the state (Laws 1864, ch. 110, §14) enacted that roads theretofore laid out by authority of law, and known as territorial roads, and which had not been legally vacated, should be considered state roads, and should be kept open and in repair according to the provisions of the general road law. It was on the strength of this legislation that the trial court gave the instruction number 18. In 1865, (Laws 1865, ch. 65, §1, ¶37,) the legislature directed the establishment of a state road from Olathe, northeasterly, connecting with the Lawrence and Westport road. According to the testimony of one of the commissioners named in this act, such commissioners, with J. C. Stuck as county surveyor, in the summer of that year laid out and surveyed such road, made out a report of their proceedings, and filed the same

with the county clerk of Johnson county. Such report was, however, not to be found in his office, though there was in it a map of such survey made by said County Surveyor Stuck. The road laid out by this survey crossed the quarter-section in question a few rods distant from the traveled track of the old Santa Fé road. The obstruction was placed on the line of the Stuck survey, and not on the line of the old Santa Fé road. Now, that a report of this Stuck survey was duly made and filed, is shown, not only by the oral testimony of the commissioner, but also by the following entries on the records of the county board of Johnson county, of date respectively January 4, 1866, and January 6, 1871:

"Report of the Olathe and Westport road passed third reading, and there being no objections thereto, and no damages being claimed by the property-holders on the route, it is ordered that the within report be adopted, and the overseer of highways along said route be ordered to open and keep the same in repair, and the plat and report of said road be adopted and recognized, and the fees therein be paid.

"On motion of Addison Bowen, it is ordered, that the road known as the Olathe and Westport road be reopened from Olathe to Sherman post office, in accordance with the survey of June, 1865, which said survey, with the report of the commissioners, was adopted at the January term, 1866, by the board of county commissioners for Johnson county, Kansas, and on said day said road was established; and it is further ordered, that the overseers along said road immediately reopen and keep open said road in their respective districts; and it is further ordered, that the county surveyor go forthwith along said line of road, and designate by survey to said overseers the location of said road, according to the survey of June, 1865."

It is true that this map prepared by Stuck bears no file-marks, yet it appears from the testimony of the county clerk that it has been for a series of years among the papers in his office. There is also the testimony of a surveyor, that in 1866 he, by authority of the county commissioners of Johnson county, made a resurvey of this road; that he obtained this map from the county clerk at the time he made the survey, and that he had seen it frequently in the county clerk's office.

There was also testimony that this road, as shown by the Stuck survey, was from time to time worked by the road overseers, and was generally traveled by the public. Now we remark that whether the acts of the legislature establishing the Santa Fé road as a highway are valid, or not, is entirely immaterial. It is perfectly clear from the testimony that the traveled track of the Santa Fé road was several rods distant from the road established by the Stuck survey. It is also clear that the obstructions were placed upon the line of the Stuck survey, and if the testimony showed a legal highway established by such survey, that is enough. We think the testimony was amply sufficient. That a road was laid out and surveyed, under the provisions of the act of 1865, by the commissioners named therein and in conjunction with the county surveyor, is positively testified to by one of the commissioners who participated in the survey. That a report of such survey was duly made and filed by the county commissioners, appears from the same testimony, and is shown also by the records of the county commissioners based thereon. The exact line of that survey is indicated by the map prepared by the surveyor and deposited with the county clerk. This map, though bearing no file-marks, was proved to be a record of the county clerk's office. It had been made the basis of official surveys by subsequent surveyors: the line as indicated by such map was accepted by the public as correct: the road was worked and traveled. With all these facts, although the report as made and originally filed has been lost or destroyed sometime during the twelve years intervening between the survey and the obstructions complained of, we think it clear that a legal highway existed across this quarter-section, and where the obstructions were put by the defendants. We think, therefore, irrespective of any question as to the validity of the acts declaring the Santa Fé road a public highway, the judgment of the district court was right. We do not hold that the instructions of the district court, in reference to this Santa Fé road, were or were not correct, but simply that they were

2. Highway deemed duly established.

not necessary for a determination of this case. Nor do we think that even if incorrect, they were in view of the abundant testimony as to the Stuck survey, so material as to justify us in disturbing the judgment; and it will therefore be affirmed.

All the Justices concurring.